908 So.2d 435 (2005)
Betty JONES, etc., Petitioner,
v.
FLORIDA INSURANCE GUARANTY ASSOCIATION, INC., Respondent.
No. SC03-1259.
Supreme Court of Florida.
July 7, 2005.
*438 George A. Vaka of Vaka, Larson and Johnson, P.L., Tampa, FL, for Petitioner.
Richard Burton Bush and Barbara Debelius of Bush, Augspurger and Lynch, P.A., Tallahassee, FL, for Respondent.
PER CURIAM.
We have for review Florida Insurance Guaranty Ass'n, Inc. v. Jones, 847 So.2d 1020 (Fla. 1st DCA 2003), which expressly and directly conflicts with the decision in Florida Insurance Guaranty Ass'n v. Giordano, 485 So.2d 453 (Fla. 3d DCA 1986). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. For the reasons stated herein, we quash the decision of the district court of appeal along with the denial of petitioner's motion for attorneys' fees. We hold that the duty of the Florida Insurance Guaranty Association (FIGA) to defend a claim against an insured party is identical to that of the insolvent insurer, and, as such, is triggered when the complaint alleges facts that fairly and potentially bring the action within policy coverage.[1] We reject the contention that the immunity provision of FIGA's enabling act precludes the initiation of actions for FIGA's breach of its duty to defend, as such actions flow from FIGA's statutory and contractual duties. We do recognize, however, that no viable cause of action for bad faith may be asserted against FIGA. With regard to permissible damages in a duty to defend action, we hold that FIGA's liability shall not exceed the policy limits of the insolvent insurer (up to the statutory maximum), plus interest from the date of judgment against the insured (if the payment of such interest is provided for under the policy's supplementary payment provision), as well as statutory interest from the date of judgment against FIGA and any attorneys' fees resulting from FIGA's denial of coverage.
We direct the district court to remand the case to the circuit court with instructions to reinstate the final summary judgment in favor of petitioner, Betty Jones, and to recalculate the damage award in accordance with the limitations set forth in this opinion. We further instruct the district court of appeal to enter an award of attorneys' fees in favor of Jones and remand the case to the trial court to determine the amount of fees to be assessed for services rendered at the trial and all appellate levels.

BACKGROUND AND FACTS
The instant action arises from a decision reversing the final summary judgment entered in favor of Jones. See Jones, 847 So.2d at 1022. The case below involved an action by Jones to satisfy a $75,000,000 judgment obtained in a wrongful death action against Michael Pratt, one of FIGA's insureds. FIGA is an insurance guaranty association created by and governed under sections 631.50-631.70 of the Florida Statutes. See §§ 631.50-.70, Fla. Stat. (1995) (the "FIGA Act"). The facts underlying the instant matter are not complex but are very simple and clear.
On May 18, 1994, a vehicle operated by Heath Gilliam collided with the vehicle operated by Althea Jones, resulting in her death. Betty Jones, the personal representative of Althea's estate, initiated a wrongful death action against Heath Gilliam *439 and Althea's uninsured motorist insurance carrier. The car Gilliam was driving at the time of the accident was connected to Spruill Auto Sales, an enterprise owned by Michael Pratt. Pratt's business was insured under a "garage policy" issued by Dealers Insurance Company. The policy provided, among other coverages, automobile liability insurance coverage with a coverage limit of $25,000, plus supplemental payment provisions, and was in effect at the time of the collision. Several months after the accident, Dealers Insurance was declared insolvent in December 1994, at which time FIGA stepped into the shoes of the insolvent insurance company.
On September 28, 1995, Jones' counsel timely submitted a proof of claim form in conformity with the applicable statute against Dealers Insurance to Dealers' receiver. In the fall of 1995, Jones' counsel also transmitted a copy of the wrongful death complaint filed against Gilliam to the FIGA claims adjuster, James Leezer. At this time, neither Pratt, Spruill Auto Sales, nor FIGA were joined as parties in the wrongful death action.
On March 15, 1996, Jones amended the complaint in the wrongful death action to include Michael Pratt, d/b/a Spruill Auto Sales as a party defendant. Count I of the amended complaint reiterated the negligence claim against Heath Gilliam. Count II asserted a negligence claim against Pratt, alleging that at the time of the accident, Michael Pratt owned Spruill Auto Sales and had given his consent to an employee, Anthony Dixon, to drive one of the "for sale" vehicles on the lot. Dixon, in turn, permitted Heath Gilliam to drive one of these cars, which was the vehicle that collided with the automobile driven by Althea Jones. On this basis, the complaint contended that Pratt and Spruill Auto Sales were legally responsible for Gilliam's negligence.
FIGA investigated Jones' claim and Pratt's insurance policy, and asserted a position that the claim was not a "covered claim" under the FIGA Act. On May 16, 1996, FIGA sent a letter to Jones advising that FIGA denied coverage to Pratt and Spruill Auto Sales in connection with this accident. In this letter, FIGA asserted as grounds for denying the claim that Pratt (1) never reported the accident to FIGA or Dealers Insurance; (2) failed to cooperate in defense of the claim by failing to answer certified letters sent by FIGA and adjusters assigned to investigate the case; (3) made a material misrepresentation on his insurance application; (4) neither owned nor possessed the car in question at the time of the incident; and (5) failed to notify FIGA of the service of process in the wrongful death action. For those asserted reasons, FIGA simply failed and refused to defend Pratt even though the allegations of the complaint invoked coverage under the insurance policy for which FIGA assumed all obligations.
Due to FIGA's failure to act no defense was presented and the trial court correctly proceeded to enter a default against Pratt in the wrongful death action. Thereafter, a jury was empaneled and returned a verdict on damages, and the trial court entered final judgment pursuant to the jury verdict on May 16, 1997, for $75,000,000. Subsequently, Michael Pratt assigned all of his rights against Dealers Insurance and FIGA to the estate of Althea Jones.
On September 11, 1998, Jones filed a three-count complaint against FIGA seeking payment of the judgment entered in the underlying action. Jones filed the complaint in the dual capacities as the personal representative of the estate of Althea Jones and as personal representative of the estate as Pratt's assignee. *440 Count I alleged that FIGA was "deemed the insurer" to the extent of Dealers Insurance's obligations on the claims within coverage of the policy, and that FIGA had the rights, duties, and obligations of Dealers as if the company had not become insolvent. The complaint outlined that under Pratt's insurance policy, Dealers Insurance had assumed the duty to defend Pratt to the exclusion of others against complaints alleging facts within the scope of the coverage of the insuring agreement, whether true or not, the duty to indemnify Pratt for the same, and the duty to make any and all payments required under the policy with regard to judgments entered against Pratt. The complaint asserted that the underlying wrongful death action alleged facts which fell within the scope of liability coverage of the insurance agreement, and that FIGA breached its statutory duties stemming from the contractual obligations in failing to defend and indemnify Pratt. Counts II and III alleged breach of contract and fiduciary duty claims arising from the same factual basis. Jones sought a judgment against FIGA for all damages incurred as well as costs, interests, attorneys fees, and any other relief the court deemed just.
In its answer, FIGA admitted that the Association had the same duties as the insurer. FIGA further conceded that under the FIGA Act, it was deemed the insurer to the extent of the insurer's obligations on covered claims, and to such extent, had the identical rights, duties and obligations of the insurer as if the insurer had not become insolvent. FIGA also asserted six affirmative defenses  only two of which pertained to coverage of the underlying claim. The balance of the defenses challenged the negligence determination-an issue that was decided adverse to FIGA with entry of the default judgment in the underlying action.[2] With regard to coverage, FIGA first asserted that Pratt fraudulently attempted to procure the insurance, and that Pratt's claim for coverage was correctly denied based on fraudulent misrepresentation. Second, FIGA argued that Jones had failed to timely file her claim, and that the claim was therefore barred. FIGA also asserted that damages against the Association were only available as permitted by section 768.81 of the Florida Statutes (1995) (the comparative negligence provision), as limited by section 631.57.
Pursuant to an agreed order, FIGA withdrew all of the negligence defenses, was granted leave to amend the misrepresentation defense and limited liability argument, and was permitted to proceed on the timeliness defense. The issues were narrowed and limited when FIGA amended its affirmative defenses to assert that FIGA's liability is limited by section 631.57 of the Florida Statutes to the limits of the underlying insurance policy, the claim was not covered due to a material misrepresentation on Pratt's insurance application, and the claim was timebarred. FIGA did not assert any defenses based on Pratt's purported lack of cooperation in the investigation or defense of the claim, failure to notify Dealers or FIGA regarding the accident, or his failure to notify FIGA of the wrongful death action.
In July of 1999, FIGA filed a motion for summary judgment asserting only that Jones had failed to submit the claim in a timely fashion. According to FIGA's motion, all claims were required to be filed *441 with the receiver for Dealers Insurance by October 1, 1995. FIGA further argued that pursuant to the statute of limitations contained in the FIGA Act, Jones was required to file any action against FIGA within one year of filing a claim with the receiver, or by October 1, 1996. See § 631.68, Fla. Stat. (1995). Jones responded by highlighting the dates of the material events which generated the action against FIGA, all of which Jones argued precluded the filing an action directly against FIGA on or before October 1, 1996. Jones advanced that counsel in the underlying wrongful death action had in fact submitted a proper proof of claim form to Dealers' receiver before the October 1, 1995, deadline. Jones also demonstrated that Pratt, the insured, was in fact added as a defendant to the wrongful death action in March of 1996, and clearly established that neither Dealers Insurance nor FIGA could be added as direct parties at that time because Florida's non-joinder statute prohibited such joinder in the underlying action. See § 627.4136(1), Fla. Stat. (1995) (claimants are required to first obtain a judgment against an insured individual as a condition precedent prior to the commencement of any legal action against the insurance company). Jones continued and demonstrated that FIGA denied coverage protection to Pratt in May of 1996, and that a final judgment was not entered against Pratt until May 16, 1997. Thereafter, Jones filed this action against FIGA seeking satisfaction of the underlying final judgment.
The trial court denied FIGA's motion for summary judgment in September 1999. Jones then requested the entry of a final summary judgment in her favor in April 2001, asserting that FIGA had wrongfully refused to fulfill its statutory duty to provide a defense in the underlying wrongful death action. Jones argued that the statutory caps on FIGA's monetary liability should not apply in the instant matter because FIGA did not satisfy its statutory duties, had refused to defend an action within the coverage of the insolvent insurer, and that FIGA should be required to pay interest on the judgment in the case. With regard to FIGA's misrepresentation defense, Jones demonstrated that FIGA had either ratified the insurance contract or was estopped from raising the misrepresentation defense because it retained the premiums paid under the contract with "full knowledge" of the facts it later attempted to claim constituted a misrepresentation. Jones requested that the trial court enter summary final judgment in her favor and ultimately enter a judgment against FIGA for the full amount of her damages as set forth in the outstanding judgment.
FIGA submitted a successive motion for summary judgment in June of 2001, arguing in its accompanying memorandum that the claim was barred because Pratt did not timely file a claim with Dealers' receiver, a position previously rejected by the trial court, and that the claim was not a "covered claim" due to a material misrepresentation Pratt made on his insurance application and then added an issue not previously pled that Pratt failed to cooperate in defending the claim. This was the first time FIGA asserted that the claim was not covered due to Pratt's failure to cooperate, and it was not part of the amended answer. FIGA also attempted to reassert that its liability was limited by the FIGA Act immunity provision, and that the Association was not liable for any penalties or interest.
The trial court entered a final summary judgment in favor of Jones, determining that FIGA had an "obligation and duty to defend its insured, MICHAEL PRATT," and that its failure to do so resulted in the entry of the final judgment in the underlying *442 action. The trial court reduced the amount of the judgment to be entered against FIGA to $299,900 (within the FIGA statutory cap) plus statutory interest from the date of entry of the judgment against Pratt, for a total of $433,178.84. With very little or no analysis, the district court reversed the trial court's final judgment under a theory that the claims alleged were not cognizable under the FIGA Act. See Jones, 847 So.2d at 1022. The district court reviewed the legislative policy foundations for the creation of FIGA as being a mechanism to avoid excessive delay in the payment of claims and the risk of financial loss to claimants or policyholders due to the insolvency of an insurer. See id. The district court also leaned heavily upon the concept that the Legislature "has treated FIGA differently from the insolvent insurance companies it pays claims for, by providing various limitations on claims FIGA is obligated to pay, a one-year statute of limitations, and immunity to FIGA." Id. After reviewing the text of immunity provision, the district court held, contrary to and in direct conflict with established law, "Appellee's claims for damages, as alleged, are not covered obligations under the FIGA Act and are barred by FIGA's immunity protection." In providing FIGA absolute immunity, the court below relied upon and erroneously applied Fernandez v. Florida Insurance Guaranty Ass'n, Inc., 383 So.2d 974 (Fla. 3d DCA 1980), a decision addressing FIGA's responsibility for "bad faith" claims, and rendered a decision in direct conflict with Florida Insurance Guaranty Ass'n v. Giordano, 485 So.2d 453 (Fla. 3d DCA 1986). See infra pp. 445-47.
Petitioner sought discretionary review of the district court's decision, which this Court granted. See Jones v. Fla. Ins. Guar. Ass'n, Inc., 861 So.2d 429 (Fla.2004) (table). This review followed.

ANALYSIS

Cognizability of Jones' Claims
According to the statute's express language, the FIGA Act was intended to "[p]rovide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer." § 631.51(1), Fla. Stat. (1995). The Act specifically provides and instructs that it shall be "liberally construed" to effect the purposes of the statute. See § 631.53. The act is designed to protect Florida citizens, not the insurance industry.
The Act obligates FIGA to respond to covered claims that arise either prior to adjudication of the insurer's insolvency or arise within thirty days after determination of insolvency of the responsible carrier. See § 631.57(1)(a)(1). The Act limits FIGA's liability for each covered claim to the amount in excess of $100 and less than $300,000. See § 631.57(1)(a)(2). Most importantly, the Act specifies that FIGA shall be deemed the insolvent insurer to the extent of the insolvent insurer's obligation on covered claims:
(1) The association shall:
. . . .
(b) Be deemed the insurer to the extent of its obligation on the covered claims, and, to such extent, shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent.
§ 631.57(1)(b). "`Covered claim' means an unpaid claim . . . which arises out of, and is within the coverage, and not in excess of, the applicable limits of an insurance policy. . . ." § 631.54(3).
It is well settled that an insurer's duty to defend its insured against a legal *443 action arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage. State Farm Fire & Cas. Co. v. CTC Dev. Corp., 720 So.2d 1072, 1077 n. 3 (Fla.1998); see also Nat'l Union Fire Ins. Co. v. Lenox Liquors, Inc., 358 So.2d 533, 535 (Fla.1977). The duty to defend must be determined from the allegations in the complaint. See, e.g., Nat. Union Fire Ins. Co. v. Lenox Liquors, Inc., 358 So.2d 533, 535 (Fla.1977); Biltmore Constr. Co. v. Owners Ins. Co., 842 So.2d 947, 949 (Fla. 2d DCA 2003); McCreary v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n, 758 So.2d 692, 695 (Fla. 4th DCA 1999); Baron Oil Co. v. Nationwide Mut. Fire Ins. Co., 470 So.2d 810, 813 (Fla. 1st DCA 1985).
The duty to defend is of greater breadth than the insurer's duty to indemnify, and the insurer must defend even if the allegations in the complaint are factually incorrect or meritless. See, e.g., Sunshine Birds & Supplies, Inc. v. United States Fid. & Guar. Co., 696 So.2d 907, 910 (Fla. 3d DCA 1997); Baron Oil, 470 So.2d at 814. Indeed, "[w]hen the actual facts are inconsistent with the allegations in the complaint, the allegations in the complaint control in determining the insurer's duty to defend." Baron Oil, 470 So.2d at 814; see Marr Invs. Inc. v. Greco, 621 So.2d 447, 449 (Fla. 4th DCA 1993); Irvine v. Prudential Prop. & Cas. Ins. Co., 630 So.2d 579, 579-80 (Fla. 3d DCA 1993) ("The duty is determined solely by the allegations against the insured, not by the actual facts, nor the insured's version of the facts."). Any doubts regarding the duty to defend must be resolved in favor of the insured. See Grissom v. Commercial Union Ins. Co., 610 So.2d 1299, 1307 (Fla. 1st DCA 1992); Baron Oil, 470 So.2d at 814.
In the instant case, the trial court entered final summary judgment in favor of Jones, determining that FIGA had "an obligation and duty to defend its insured, MICHAEL PRATT." This determination is not only amply supported by and in conformity with the only evidence in the record as informed by the above-stated principles of law, it is the proper application of Florida law and conclusively established. Count II of the complaint filed against Heath Gilliam and Michael Pratt d/b/a Spruill Auto Sales alleged that Anthony Dixon, an employee of Spruill Auto Sales, was permitted to drive the vehicle ultimately involved in the collision with Althea Jones, and that Dixon permitted Gilliam to drive the vehicle, thus extending Pratt's consent to Gilliam. The complaint further contended that Gilliam was negligent in the operation of the vehicle, causing a collision with the vehicle operated by Althea Jones. Finally, the complaint alleged that "[a]s the person with possession and control of that motor vehicle, Mike Pratt and Spruill Auto Sales are legally responsible for Mr. Gilliam's negligence." See Ray v. Earl, 277 So.2d 73 (Fla. 2d DCA 1973); Winters v. Phillips, 234 So.2d 716 (Fla. 3d DCA 1970).
The liability insurance coverage provisions of the policy provided that Dealers Insurance would pay "all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies caused by an accident resulting from garage operations." The policy very broadly defined "garage operations" to include the "ownership, maintenance, or use of the autos indicated in Part II as covered autos." Part II of the garage policy cross-referenced Item Two of the declarations page for determining which autos were "covered autos" under the policy. Item Two of the declarations page indicated by numerical code that "any auto" was a covered auto under the liability insurance coverage section of *444 the policy. The liability insurance coverage provisions further specified that Michael Pratt d/b/a/ Spruill Auto Sales was insured for any covered auto, and that, subject to certain exceptions not implicated in the instant matter, "[a]nyone else is an insured while using with your permission a covered auto." Finally, the policy specified that it is exclusively Dealers' "right and . . . duty to defend any suit" seeking damages under the policy.
Upon comparing the allegations in the complaint with the insurance policy in effect at the time of the accident, it is absolutely clear that the complaint alleged facts that fairly and potentially brought the legal action within policy coverage, thus triggering Dealers' duty to defend Pratt. The decision in Government Employees Insurance Co. v. Sellers, 667 F.Supp. 850 (S.D.Fla.1987), is instructive on this point. There, the district court dismissed GEICO's action for declaratory relief regarding whether one of two possible drivers of a vehicle involved in a collision had the insured's permission to drive the vehicle. See id. at 852. GEICO had argued that it would be unduly burdened in proceeding with the action if it ultimately was not liable under the policy. See id. at 851. In dismissing the action, the district court determined that GEICO in essence sought relief from its duty to defend-relief that could not be granted because the claimant's state court claim "brings Geico, as a matter of law, within the rubric of what it would have to defend, regardless of the outcome of the case." Id. at 852.
Moreover, as previously stated, any doubt with regard to the duty to defend must be resolved in favor of the insured. See Grissom, 610 So.2d at 1307; Baron Oil, 470 So.2d at 814. This is not a case in which a lack of coverage or exclusion from liability emerges in any conceivable way from comparing the facts in the complaint with the text of coverage under the policy. Cf. Nationwide Mut. Fire Ins. Co. v. Keen, 658 So.2d 1101 (Fla. 4th DCA 1995) (plaintiff's statement that he was operating a boat with a 40-horsepower engine relieved the insurer of the duty to defend because the boat was more powerful than coverage allowed); State Farm Mut. Auto. Ins. Co. v. Culver, 576 So.2d 918 (Fla. 2d DCA 1991) (determining there was no duty to defend against complaint alleging that the claimant's vehicle was struck by a 1977 Monte Carlo where the insured's policy covered a 1975 Monte Carlo and the insurance held by the insured's grandmother for a 1977 Monte Carlo lapsed after her death). Thus, this record conclusively established that Dealers clearly had the duty to defend Michael Pratt. When Dealers became insolvent, FIGA assumed that duty as if Dealers had not become insolvent and was deemed the insolvent insurer to the full extent of the policy coverage protection including the exclusive duty to defend. See § 631.57(1)(b), Fla. Stat. (1995).
With scant analysis, the district court simply reversed the trial court's entry of the final judgment, concluding that "Appellee's [Jones'] claims for damages, as alleged, are not covered obligations under the FIGA Act and are barred by FIGA's immunity protection." Jones, 847 So.2d at 1022 (citing Fernandez v. Florida Ins. Guaranty Ass'n, Inc., 383 So.2d 974 (Fla. 3d DCA 1980)). This conclusion is in conflict with established law and in error because it departs from the statutory construct of the FIGA Act and misinterprets and erroneously applies the only precedent upon which it relies.
The district court erred in concluding that the immunity provisions of the FIGA Act bar Jones' claims. The FIGA Act provides:

*445 There shall be no liability on the part of, and no cause of action of any nature shall arise against, any member insurer, the association or its agents or employees, the board of directors, or the department or its representatives for any action taken by them in the performance of their powers and duties under this part.
§ 631.66, Fla. Stat. As cited by the district court, the Third District in Fernandez interpreted the immunity provision as barring only bad faith settlement claims against FIGA. However, Fernandez did not involve and does not stand for the proposition that FIGA cannot be held responsible for breaching its duties imposed by statute and flowing from the contract of the insolvent insurer, including the statutory duty to be deemed the insolvent insurer in the defense of covered claims. Indeed, even Fernandez recognized that responsibility under the circumstances presented here.
In Fernandez, FIGA succeeded a defunct insurance company as a party-defendant in a personal injury action. See 383 So.2d at 975. FIGA defended the action but only refused to settle the claim for the $10,000 policy limits, and the jury returned a $54,000 verdict against the insured. See id. The insured then initiated a classic bad faith failure to settle action against FIGA seeking recovery of the $44,000 excess, claiming that FIGA had exercised bad faith in refusing to settle the claim within the policy limits. See id. The Third District determined that the immunity provision barred the bad faith action because FIGA's refusal of the $10,000 settlement offer was an "action it took in the performance of [its] powers and duties under the statute to dispose of the covered claim in question." Id. at 975 (internal quotation marks omitted). The district court held, "An application of the plain terms of § 631.66, which neither require nor permit judicial construction, therefore compels the conclusion that no bad faith action lies against FIGA." Id.
The holding in Fernandez does not compel nor does it even support an identical conclusion in the instant matter. If it did and FIGA could totally ignore its statutory requirements, no Florida citizen could ever state a cause of action resulting therefrom. The court below clearly erroneously applied existing law concerning FIGA's immunity from bad faith claims into the present non bad faith simple coverage context. Here, Jones did not file a bad faith action against FIGA based upon its failure to settle in defending the underlying action as part of its obligations under the Act. To the contrary, Jones sought recovery based upon FIGA's refusal to satisfy the duty to defend and indemnify Pratt clearly held by Dealers Insurance and specifically imposed on FIGA by both the insurance contract and section 631.57 of the FIGA Act. Thus, the decisions in Jones and Fernandez involve similar but different factual scenarios, and the statutory/contractual duty to defend and indemnify claim is totally different and distinct from any action for bad faith failure to settle and is cognizable under Florida law. Despite these differences, the First District proceeded to incorrectly apply the rule of law set forth in the bad faith context of Fernandez to the factual situation in Jones.
The First District's decision is in express and direct conflict with the Third District's decision in Florida Insurance Guaranty Ass'n v. Giordano, 485 So.2d 453 (Fla. 3d DCA 1986). The dissent is misdirected in its contention that there is no jurisdictional conflict with Giordano. In fact, an examination of that decision clearly demonstrates how the decision in Jones has created an express and direct conflict within Florida law that must be *446 resolved. In Giordano, the widow of one killed in a gas explosion initiated a wrongful death action against an Illinois valve corporation which had conducted business in Florida and was insured by Reserve Insurance Company with a policy limit of $300,000. See 485 So.2d at 454. Reserve defended the claim for four years until the company was declared insolvent and the cause of action was transferred to and assumed by FIGA. See id. After discovering that the valve company was an Illinois corporation, FIGA attempted to assert that the Illinois Guaranty Fund (IGF), with statutory coverage limits of $150,000, was the "primary" carrier, and that FIGA, with statutory coverage limits of $300,000, was only an "excess" carrier with no obligation to the insured and no duty to defend the action. See id.[3]
IGF assumed responsibility for defense of the action. See id. Settlement negotiations ensued, of which FIGA was aware, but which were not directly authorized by FIGA. The parties reached a settlement agreement pursuant to which they stipulated to the entry of a $525,000 judgment to be assessed as follows: IGF ($150,000), Employer's Reinsurance ($225,000), and FIGA ($150,000). See id. at 455. The insured valve company assigned to the injured party, Giordano, its rights against FIGA for the Association's portion of the judgment plus attorney's fees, costs, interest, and punitive damages, just as has occurred in the present case. See id.
Thereafter, Giordano proceeded to file a two-count claim against FIGA (just as has occurred here) asserting (1) her rights as assignee for the enforcement of FIGA's statutory obligations and judgments entered on the settlement agreement; and (2) that FIGA's course of conduct had been willful, wanton, reckless and a denial of due process and equal protection. See id. at 455. The trial court dismissed the second count, but entered a summary final judgment in favor of Giordano on the first claim, concluding that FIGA had a duty to defend the insured valve company and a duty to pay the settlement. See id. Here, the same determination was made at the trial level but the underlying obligation had the dignity of a final judgment.
In affirming the trial court's determination with regard to FIGA's duties, the district court concluded that when FIGA stepped into the place of the insurance carrier, Reserve, upon insolvency, it was under a statutorily imposed duty to defend the insured. Id. at 456. The district court also affirmed the trial court's dismissal of the second count, determining:
The allegations of this count, though couched in the language of tort and constitutional law, still make out an action for bad faith against FIGA. Under section 631.66, Florida Statutes (1981), however, no action for bad faith lies against FIGA.
Id. at 457 (citing Fernandez v. Fla. Ins. Guar. Ass'n, 383 So.2d 974 (Fla. 3d DCA 1980)).
Thus, as was made clear in Giordano, a complaint alleging that FIGA has breached statutory or contractual duties owed to an insured to defend under the terms of an insurance contract is cognizable even though a different form of action alleging that FIGA exercised bad faith in *447 handling the settlement of a claim may not be viable. The district court here erred to the extent that it conflated these two distinct concepts in holding that Jones' claims against FIGA are barred by FIGA's immunity provision. As Dealers' statutory successor, FIGA assumed the insurance company's contractual duties to defend and indemnify Pratt. See Carrousel Concessions, Inc. v. Fla. Ins. Guar. Ass'n, 483 So.2d 513, 516 (Fla. 3d DCA 1986) (determining that pursuant to the terms of the insurance contract, FIGA had a duty to defend the insured until the applicable limit of its liability had been exhausted and to pay all costs incurred in the defense).
According to the dissent, Jones and Giordano do not expressly and directly conflict because in Jones, FIGA unilaterally concluded that the underlying claim was not covered under the insurance policy, and in Giordano, FIGA did not contest coverage. However, this analysis suffers from the same "cart before the horse" flaw that beset the district court below and creates the conflict this Court is constitutionally empowered to address. As we explain in our opinion today, it is the nature of the underlying claim that drives the duty to defend analysis. The district court below simply concluded that "[a]ppellee's claims for damages, as alleged, are not covered obligations under the FIGA Act and are barred by FIGA's immunity protection." Jones, 847 So.2d at 1022. Thus, the decision below holds and affords FIGA absolute blanket immunity from all legal actions and immunizes FIGA's decisions with regard to whether a claim initiated against an insured is covered by the operative insurance policy. This holding expressly and directly conflicts with the holding in Giordano, which recognized the validity of FIGA's responsibility and duty to defend claims against insureds, but determined that only bad faith claims against it are barred by statutory immunity. Thus, contrary to the dissent's assertions, our jurisdiction in this matter is clear, and resolution of the conflict between the First and Third districts is not only proper, but it is necessary for purposes of uniformity of Florida law. See generally Wainwright v. Taylor, 476 So.2d 669, 670 (Fla.1985) (noting that the Court's concern regarding cases based on conflict jurisdiction is "the precedential effect of those decisions which are incorrect and in conflict with decisions reflecting the correct rule of law").
Returning to the merits of the instant case, in support of Jones' argument that the immunity provision does not defeat her claim against FIGA, Jones argues that FIGA's immunity extends only to independent actions taken within and in accordance with its statutory duties, not to damages arising from the failure to perform those statutory duties to provide a defense as specifically required by the statute and the insurance contract for which FIGA becomes responsible. This follows the analysis undertaken by the Alaska Supreme Court in Washington Insurance Guaranty Ass'n v. Ramsey, 922 P.2d 237 (Alaska 1996). In that case, the plaintiff in the underlying tort action initiated an action against the Washington Insurance Guaranty Association (WIGA) for breach of the duty to reasonably settle the underlying claim. See id. at 239. The Alaska court determined that the WIGA Act[4] imposed a statutory duty on WIGA to reasonably settle claims and therefore held that the immunity provision did not preclude an action for failure to settle a claim. See id. at 243. The court reasoned that any action taken by the Association in violation of its duties, such as the duty to *448 reasonably settle claims, was not an action taken pursuant to statutory authority warranting application of the immunity provision. See id. at 244.[5]
FIGA attacks the decision in Ramsey as an outlier, contravening the well-reasoned decisions in T & N PLC v. Pennsylvania Insurance Guaranty Ass'n, 800 F.Supp. 1259 (E.D.Pa.1992); Bills v. Arizona Property & Casualty Insurance Guaranty Fund, 194 Ariz. 488, 984 P.2d 574 (Ct.App.1999); Isaacson v. California Insurance Guarantee Ass'n, 44 Cal.3d 775, 244 Cal.Rptr. 655, 750 P.2d 297 (1988); Veillon v. Louisiana Insurance Guaranty Ass'n, 608 So.2d 670 (La.Ct.App.1992); Schreffler v. Pennsylvania Insurance Guaranty Ass'n, 402 Pa.Super. 309, 586 A.2d 983 (1991); and Vaughn v. Vaughn, 23 Wash.App. 527, 597 P.2d 932 (1979). However, proper analysis of each of these cases only supports our conclusion and confirms the holding in Fernandez that insurance guaranty associations are only immune from bad faith actions pertaining to claims handling, not actions such as that in the present case. See T & N, 800 F.Supp. at 1265 (holding state association immune from suit for bad faith handling of claim); Veillon, 608 So.2d at 672 (affirming dismissal of claims against association for bad faith, negligence, and breach of fiduciary duty arising from the failure to settle claim within policy limits); Schreffler, 586 A.2d at 985 (citing Fernandez and holding association immune from suit for bad faith failure to settle a claim); Vaughn, 597 P.2d at 934 (holding that because state courts had determined that bad faith claims sound in tort rather than contract, bad faith damages are not "covered claims" under the state's guaranty act). Not a single one of these decisions directly contravenes Ramsey, or stands for the proposition that an action cannot be sustained against an insurance guaranty association for the breach of statutory or contractual duties under the contract for which the association is deemed the insolvent insurer.
The clear distinction between classic bad faith settlement actions and those arising from the breach of statutory duties is best highlighted in Bills. There, the insolvent insurer's assignee initiated an action against the guaranty association for negligence, breach of contract, and bad faith alleging that the association had refused to settle a wrongful death claim. See 984 P.2d at 576. The trial court entered a partial summary judgment dismissing the causes of action "sounding in tort," which included only the negligence and bad faith claims. In affirming that decision, the Arizona appellate court noted that the majority view rejects the viability of bad faith claims against insurance guaranty associations. See id. at 581 (citing T & N PLC, Fernandez, Veillon, Schreffler, Vaughn, and Isaacson). The Bills court specifically determined that the decision in Ramsey was inapposite to determining the viability of bad faith claims because the plaintiff in that case, (Ramsey) "sued merely to enforce the guaranty fund's statutory obligations." Id. While the Bills court did not need to adopt the Ramsey court's analysis that an association's refusal to settle a claim is not an action taken pursuant to its statutory duties, it acknowledged that such reasoning was nonetheless inapplicable in a case where the plaintiff sought "noncontractual and nonstatutory damages under *449 a common law bad faith theory." Id. Thus, Bills cannot be invoked for the proposition that the FIGA Act immunity provision defeats the instant claim.
Likewise, in Isaacson, the California Supreme Court held the state's guaranty association immune from liability under a variety of tort theories,[6] but specifically determined that the association could be subject to liability for payment of an adverse judgment for breaching its statutory duty to pay and discharge covered claims, circumstances identical to those in the case before us. See 750 P.2d at 300-01. The California court specifically stated that if the association refuses to defend a covered claim arising under an insolvent insurer's insurance policya duty which is defined in terms of the underlying policy provisionsthen it has breached its statutory duties under the state's guarantee act. See id. at 308.
Setting aside the soundness and wisdom of the clear reasoning employed by the Ramsey court, the FIGA Act immunity provision does not defeat Jones' claim. Under the "total immunity" interpretation espoused by FIGA and seemingly endorsed by the district court and encouraged by the dissent, FIGA would be permitted to totally ignore the statutory and contractual obligations, to withdraw from representation undertaken by the insurer prior to insolvency, or unilaterally refuse to defend any claim arising after insolvency, with absolutely no legal repercussions or responsibility for its actions or recourse for the insured. Surely this cannot be the statutory plan. FIGA could, in its theory, just simply refuse to defend or pay a single claim, with total immunity from legal action. Such an overly broad interpretation of the immunity provision would undermine and emasculate a fundamental canon of statutory construction by effectively negating the balance of the FIGA Act, including the provisions imposing on FIGA the same rights and obligations of the insolvent insurer. See Acosta v. Richter, 671 So.2d 149, 153-54 (Fla.1996) (reiterating that statutes should be interpreted to give effect to every clause and accord meaning and harmony to all of their parts). FIGA would have no duty to do anything and no action would ever be available to provide relief, a result contrary to logic and common sense.
As evidenced by the decisions in Giordano and Carrousel, Florida courts have not taken the position that actions against FIGA alleging a violation of statutory and contractual duties are not cognizable, or are in all instances barred by the FIGA Act immunity provision. The applicable statute itself clearly provides that FIGA may "be sued." § 631.57(2)(c), Fla. Stat. (1995). It was thus error for the district court to conclude that Jones' claims were not cognizable as a matter of law by operation of the FIGA Act's immunity provision.

Coverage of Jones' Claims
FIGA also attempts to argue that its duty to defend extends only to "covered claims," and that it cannot be liable for a failure of the duty to defend in the instant case because the underlying wrongful death action was not covered under the policy. FIGA now contends that Pratt made a material misrepresentation on his application regarding whether others would be driving the business's vehicles; was not the owner of the vehicle involved in the accident, which was being used to leave the scene of a felony at the time the *450 accident occurred (which was not an issue in the pleadings); failed to cooperate in defense of the claim in violation of the terms of the policy (which was not an issue in the pleadings); and failed to present his claim within the statutory time limits.
FIGA seeks to deflect liability by asserting what are essentially coverage defenses to the underlying wrongful death claim. However, all of FIGA's arguments that Jones failed to present "covered claims" were either decided adversely to FIGA's position in the entry of the judgment in the underlying action or were properly rejected by the trial court.
It is well settled that "where an indemnitor has notice of a suit against his indemnitee and is afforded an opportunity to appear and defend, a judgment therein rendered against the indemnitee, if without fraud or collusion, is conclusive against the indemnitor as to all material questions therein determined." Grain Dealers Mut. Ins. Co. v. Quarrier, 175 So.2d 83, 86 (Fla. 1st DCA 1965); see also Martino v. Fla. Ins. Guar. Ass'n, 383 So.2d 942, 944 (Fla. 3d DCA 1980) (FIGA is bound by default judgment entered against insolvent insurer due to the mutual or successive relationship created by the Legislature). By virtue of that rule, an insurer and FIGA here may be free to challenge properly pled issues pertaining to fraud in the procurement of the insurance policy or the insured's alleged breach of an essential condition of the policy. However, questions such as identity, negligence, and other factual issues, which were interwoven with and a necessary and integral part of the determination of judgment in the underlying action are precluded from further review and subsequent collateral attack. See Quarrier, 175 So.2d at 86.
FIGA's coverage challenge implicates at least one factual issue that was determined by entry of the final judgmentownership, possession, dominion or control of the vehicle at the time of the accident. FIGA contends factually that ownership of the vehicle was in question, and at the time of the accident the vehicle bore temporary license tags and was registered to an individual other than Michael Pratt. It must be remembered that the insured was in the automobile business and such factor was contemplated with the broad coverage for which FIGA became responsible. The entry of the judgment in the underlying case binds FIGA to the factual determination that Pratt had an ownership, possession, or control interest in the motor vehicle involved in the collision with Althea Jones and was legally responsible for Gilliam's negligence in operating that vehicle. See id. Having refused to defend, FIGA cannot now attempt to circumvent and challenge that factual determination.
Even if FIGA could properly open this issue for review, any challenge would be meritless. The garage policy defined "covered auto" most broadly as "any auto." See supra, p. 443. The breadth of that language, coupled with the expansive definition of "garage operations," renders actual ownership of the vehicle in question totally irrelevant. Moreover, Florida courts have held that the doctrine of implied consent imputes any grant of permission by those entrusted with the vehicle to the original permittor. See, e.g., Ray v. Earl, 277 So.2d 73 (Fla. 2d DCA 1973); Winters v. Phillips, 234 So.2d 716 (Fla. 3d DCA 1970).
The trial court properly rejected FIGA's other attempts to challenge the insolvent insurer's responsibility to defend the insured and indemnify Pratt under the policy. The trial court expressly concluded that the FIGA statutory limitations did not bar the claim, and that the policy was not *451 voidable on the basis of any purported misrepresentations on the insurance application because the "undisputed facts show that [the insurance company] did not reasonably rely upon such misrepresentations in issuing and maintaining the policy." Both determinations are supported by the record.
With regard to FIGA's time limitations defense, the Association erroneously argues that Michael Pratt failed to present a claim to the receiver by the October 1, 1995, deadline. This record demonstrates that the claim was filed in September. FIGA further asserts that Pratt would have been time-barred from commencing any action against the Association, and that the same time bar operates against Jones as Pratt's assignee. However, even assuming that Pratt would be precluded from initiating an action against FIGA, the Association's argument fails. Jones has presented the instant action in her dual capacities as Pratt's assignee and as the personal representative of the estate of Althea Jones and timely initiated the only action available against the insured, the only permissible defendant as a matter of law.
FIGA cannot sustain the position that the one-year FIGA statutory limitation for initiating claims against FIGA bars Jones' action. The record shows that Jones' counsel began exchanging letters with FIGA regarding this matter in the fall of 1995, and that Jones timely submitted a proof of claim form with the receiver. Jones timely amended the wrongful death complaint on March 15, 1996, to include the insured, Michael Pratt, d/b/a Spruill Auto Sales, as a named defendant, which was a necessary precursor to initiating any action against Dealers (or FIGA) under Florida's nonjoinder of insurers statute and satisfying the limitation period now asserted by FIGA. See § 627.4136(1), Fla. Stat. (1995); § 631.68, Fla. Stat. (1995). It was not until May 1, 1996, that FIGA sent a letter to Pratt denying coverage; Jones' wrongful death counsel was not advised of the denial until May 16. A judgment was entered against the insured, Pratt, and a final judgment was entered on May 16, 1997. Based on these facts, legal action was initiated against the insured before the October 1, 1996, deadline for filing claims. The statutes cannot be held to apply to a cause of action which had not yet accrued, and such argument is contrary to the terms of the statute, which requires the action to be filed against the insured or the association. See § 631.68, Fla. Stat. (1995).
As determined by the trial court, there is no evidence that any misrepresentation allegedly made by Pratt on the insurance application regarding authorization to operate the cars at Spruill affected Dealers' decision to issue and maintain the garage policy. Sam Allen, the senior claims examiner for FIGA who was responsible for responding to Jones' interrogatories in the underlying wrongful death action, testified at deposition that the only alleged misrepresentations made on that portion of the application were those regarding the driving records of Pratt and McClendon. Allen did not state, suggest or even hint that Pratt's naming of the individuals who had occasion to drive the cars was a misrepresentation or problem. Allen confirmed that Dealers in fact obtained correct information about the driving records of Pratt and McClendon from the Department of Motor Vehicles before issuance of the policy, but issued the insurance contract and never attempted to rescind the policy based on that representation. Thus, the evidence in the record with regard to arguments of misrepresentationwhether it pertains to the owners' driving record or who was permitted to drive the business's carsdid not impact the insurance contract, *452 the issuance of the contract, or Pratt's coverage under the policy of insurance. The argument is a paper issue without factual support.
FIGA also contends that Jones' action was not a covered claim because Gilliam was using the vehicle to leave the scene of a felony and was in the process of failing to respond to a marked police vehicle when the accident occurred. FIGA raises this argument presumably to invoke a policy exclusion applicable to intentional acts. See Wiggins v. Portmay Corp., 430 So.2d 541, 542 (Fla. 1st DCA 1983) ("Affirmative defenses do not simply deny the facts of the opposing party's claim. They raise some new matter which defeats an otherwise apparently valid claim."). Florida courts have held that a defense based on a policy exclusion ordinarily should be raised as an affirmative defense. See St. Paul Mercury Ins. Co. v. Coucher, 837 So.2d 483, 487 (Fla. 5th DCA 2002). However, in the instant action, FIGA never pled or alleged any fact of impermissible use of the vehicle at the time of the accident as an affirmative defense to coverage. FIGA, therefore, has waived any claim to assert a defense similar to this affirmative defense. See, e.g., Jojo's Clubhouse, Inc. v. DBR Asset Mgmt., Inc., 860 So.2d 503, 504 (Fla. 4th DCA 2003) (affirmative defenses are waived if not pled); St. Paul Mercury Ins., 837 So.2d at 487 (same); Langford v. McCormick, 552 So.2d 964, 967 (Fla. 1st DCA 1989) (same); see also Goldberger v. Regency Highland Condo. Ass'n, Inc., 452 So.2d 583, 585 (Fla. 4th DCA 1984) ("Failure to plead an affirmative defense waives that defense, and an appellate court will not consider it in reviewing a summary judgment for a plaintiff."). This afterthought, as with the misrepresentation argument, has no basis in this record for argument.
FIGA also attempts to insert a new issue as it contends that the wrongful death action was not a covered claim because Pratt violated the terms of the policy by failing to report the accident, notify FIGA that an action had been filed against him, and cooperate in investigation and defense of the claim. As with the previous defense, Pratt's purported failures to provide the requisite notification and cooperation were never pled as affirmative defenses and are, therefore, waived. See, e.g., Jojo's Clubhouse, 860 So.2d at 504; St. Paul Mercury Ins., 837 So.2d at 487 (same); Langford, 552 So.2d at 967.
However, it must be noted that FIGA could not sustain these defenses even if they were properly pled. To constitute a defense to insurance coverage, lack of cooperation must be prejudicial. See Tri-State Ins. Co. of Minnesota v. Fitzgerald, 593 So.2d 1118 (Fla. 3d DCA 1992). FIGA cannot viably argue that it was prejudiced by Pratt's failure to notify the Association of the accident and Jones' pending legal action. FIGA was notified of the claim several weeks after Jones amended the wrongful death complaint to include Pratt as a named party, as a courtesy copy of the pleading was served on FIGA by Jones' counsel. In deposition testimony, FIGA claims adjuster James Leezer confirmed that the Association had in fact received the copy of the complaint prior to denying Pratt's claim, had notice of the action, and had an opportunity to investigate and defend it. With regard to the other aspects of FIGA's defensenamely that Pratt failed to cooperate in FIGA's investigation of the accident and wrongful death actionthe record again reveals that FIGA did not and could not affirmatively establish that Pratt himself was aware of the accident or the ongoing investigation such that his failures could be deemed a breach of the duty to cooperate. *453 Ultimately, even if Pratt did violate the contractual duty to cooperate, FIGA has failed to establish any prejudice whatsoever. FIGA had all information and simply made the unilateral decision that it would not defend the insured. These afterthought arguments have no foundation.
Based on the foregoing, we conclude that the district court erred in determining that FIGA had absolute immunity from legal action resulting from the Association's breach of the statutory and contractual duties owed to Pratt. It is clear from the record that FIGA had an obligation to defend Pratt in the underlying wrongful death action. The trial court properly and correctly rejected FIGA's attempt to avoid its obligation by asserting hollow afterthoughts of non-coverage, which themselves were either procedurally barred, without a factual basis, or meritless. Having determined that FIGA violated its statutory and contractual obligations to defend and indemnify Pratt, the only question that remains pertains to the appropriate amount of any judgment that should be entered under these circumstances.

FIGA's Duty to Pay Amounts in Excess of Policy Limits
The FIGA Act obligates FIGA to the extent of covered claims for that amount which is in excess of $100 but less than $300,000. See § 631.57(1)(a)(2). The $300,000 liability cap becomes applicable only if FIGA's obligation would otherwise exceed that amount. In all other cases, liability is generally limited to the amount for which the insurer would have otherwise been responsible under the policy. See § 631.57(1)(a)(3). Attorney's fees may also be awarded pursuant to section 631.70 of the Florida Statutes when FIGA denies a covered claim by affirmative action other than delay. See § 631.70. The Act specifically provides that "[i]n no event shall the association be liable for any penalties or interest." See § 631.57(1)(b).
The award in the instant matter totaled $433,178.84, and was comprised of two parts: a base award of $299,900 plus a $133,278.84 statutory interest award running from May 16, 1997, the date of the judgment against Pratt. The final summary judgment order also provided that the total amount would bear interest at the legal rate, presumably until payment. As explained in the following paragraphs, the proper award of damages in the instant matter could have only been a base award of $25,000, commensurate with Dealers' limit of liability in the underlying policy, plus interest on that amount as provided under the policy's supplementary payment provision, and statutory interest from the date of the judgment against FIGA until payment along with attorney fees due to FIGA's denial of coverage.
The precise text of section 631.57 of the FIGA Act provides:
(1) The association shall:
(a)1. Be obligated to the extent of the covered claims. . . .
2. The obligation under subparagraph 1. shall include only that amount of each covered claim which is in excess of $100 and less than $300,000. . . .
3. In no event shall the association be obligated to a policyholder or claimant in an amount in excess of the obligation of the insolvent insurer under the policy from which the claim arises.

§ 631.57, Fla. Stat. (1995) (emphasis supplied). In a similar manner, the concept of a "covered claim" is defined and limited by the statutory definitional phrase "is within the coverage, and not in excess of, the applicable limits of an insurance policy." § 631.54(3), Fla. Stat. (1995). Further, FIGA is "obligated to the extent of the covered claims." § 631.57(1)(a)(1), Fla. Stat. (1995)
*454 Thus, the Act limits FIGA's liability to the policy limit not to exceed $300,000, no matter how high the insured's policy limits may be. While $300,000 is the upper bound, FIGA is only obligated to the same extent as the insurer under the policy. If the insurer's obligation amounted to only $101 under the policy, then FIGA's liability would be only $1. FIGA's responsibility and liability is directly linked to the insolvent insurer's contractual obligations. Although the defalcations of FIGA may cause and generate damages far greater than the contractual limit of coverage or the statutory maximum, the Legislature has not made any provision for recovery in excess of these amounts. This is precisely where the parties find themselves in this case.
As the Act makes clear, FIGA's liability must be adjudged from the perspective of the insurer's obligation under the policy giving rise to the claim. The Act does not allow for an award of an amount in excess of the policy provisions. Indeed, this was the conclusion reached by the Third District in Rivera v. Southern American Fire Insurance Co., 361 So.2d 193 (Fla. 3d DCA 1978), where the court affirmed dismissal of a bad faith claim against FIGA which alleged that the insolvent insurer, Southern American, had dealt in bad faith with the claimant. The claimants sought an amount $25,000 in excess of the policy limits, and the district court held, "FIGA is not liable for any amounts in excess of policy limits and is not vicariously liable for tortious acts of members' insurers." Id. at 194 (emphasis supplied). Although it was FIGA itself that actually caused the damages in this case, not an insolvent insurer, the same statutory provision appears applicable.
Pratt's garage policy obligated Dealers' Insurance to pay $25,000 for any one accident or loss, plus any supplementary payments due. As noted by Jones, one of the supplementary payment provisions of the insurance policy obligated Dealers to pay interest owed on judgments entered. The relevant subpoint from the policy provides:
PART IV  LIABILITY INSURANCE
. . . .
B. WE WILL ALSO PAY.
In addition to our limit of liability we will pay for the insured:
. . . .
5. All interest accruing after the entry of the judgment in a suit we defend. Our duty to pay interest ends when we pay or tender our limit of liability.
As provided under the Act, FIGA is deemed the "insurer" to the extent of covered claims and has the same obligations as the insolvent insurer as if the insurer had not been declared insolvent. See § 631.57(1)(b); Fla. Ins. Guar. Ass'n v. Johnson, 654 So.2d 239, 241 (Fla. 4th DCA 1995) (determining that there was a statutory basis upon which to assess court costs in excess of policy limits because FIGA "stands in the shoes" of the insolvent insurer). The obligations imposed on FIGA under section 631.57(1)(b) must be construed liberally to effect the purposes of the FIGA Act, see § 631.53, one of which is to avoid financial loss to claimants or policyholders because of the insolvency of the insurer. See § 631.51(1). Thus, it is consistent with, and indeed advances, the purposes of the FIGA Act to bind FIGA to the terms of the supplementary payment provision and hold the Association liable for interest on judgments entered to the same extent as Dealers would have been liable. The contract must be interpreted as though FIGA satisfied and performed the contractual provisions.
Indeed, courts in Florida have assessed costs in excess of limits of liability against *455 FIGA through supplementary payment provisions. In Johnson, the district court held FIGA responsible for court costs in excess of the underlying policy's liability limits. See 654 So.2d at 240. The court applied the court costs through a supplementary payment provision that obligated the insolvent insurer to pay on behalf of a covered person reasonable expenses incurred in the litigation. Id. at 240. The district court reasoned that the insurer had decided against settling the claim and that the resulting litigation expenses were therefore a responsibility to be covered. See id. In Steele v. Kinsey, 801 So.2d 297 (Fla. 2d DCA 2001), the Second District reached the opposite conclusion, not on the basis that fees and costs in excess of policy limits could not be assessed against FIGA through supplementary payment provisions, but based on its conclusion that the language promising payment of expenses incurred at the insurer's request could not be reasonably interpreted to include litigation expenses. See id. at 300.[7]
The language in section 631.57 providing that "[i]n no event shall the association be liable for any penalties or interest," § 631.57(1)(b), does not undermine the conclusion that FIGA is liable under the policy's supplementary payment coverage provision for interest accruing on an underlying judgment. Some Florida courts in a different context have interpreted the language of section 631.57 as precluding awards of interest directly against FIGA that predate entry of a judgment against the Association where no supplementary payment coverage benefit issue was involved. See Fla. Ins. Guar. Ass'n v. Gustinger, 390 So.2d 420, 421 (Fla. 3d DCA 1980) (reversing award of interest against FIGA running from date of compensation award against insurer, which occurred prior to insurer's insolvency); see also FIGA v. R.V.M.P. Corp., 874 F.2d 1528, 1532 (11th Cir.1989) (reversing award of prejudgment interest assessed against FIGA in a declaratory judgment action to assess FIGA's coverage liability); Fla. Ins. Guar. Ass'n v. Jacques, 643 So.2d 101, 103 (Fla. 4th DCA 1994) ("Any interest sought before the trial court enter[s] judgment against FIGA constitutes prejudgment interest as to FIGA" and is not permitted under the Act); Fla. Cmty. Health Ctr. v. Ross, 590 So.2d 1037 (Fla. 1st DCA 1991) (reversing the award of penalties and interest on compensation claims against FIGA where the Association presumably had been handling the claims for some period of time); NCNB Nat'l Bank of Fla. v. Fla. Ins. Guar. Ass'n, 541 So.2d 728, 731 (Fla. 1st DCA 1989) (holding that the FIGA Act precluded assessment of interest accrued from the time the claims for unearned premiums arose); Carballo v. Warren Mfg. Co., 407 So.2d 603, 607 (Fla. 1st DCA 1981) (striking award of prejudgment interest in worker's compensation case).
This line of cases does not, however, address or preclude the assessment of interest where, as here, the damages resulted from FIGA's abdication of its statutory and contractual duties, one of which was a supplementary payment coverage obligation to pay interest on judgments entered against the insured. To hold that FIGA is not responsible for interest accruing under the instant scenario would impermissibly negate that portion of the contract, see City of Homestead v. Johnson, 760 So.2d 80, 84 (Fla.2000) (stating that contracts must be interpreted to give effect to all portions), and undermine the *456 section of the FIGA Act which provides that the Association assumes the obligations of the insurer as if that insurer had not become insolvent. See Acosta, 671 So.2d at 153-54 (reiterating that statutes should be interpreted to give effect to every clause and accord meaning and harmony to all of its parts). It would also undermine and eviscerate the directive that the statutory provisions be liberally construed to avoid financial loss to insureds. The argument and position asserted by FIGA would place FIGA in a far better position and the insured in one less advantageous upon FIGA's total failure to perform according to the statutory requirements than if it conducted itself as required by the applicable statutes. This would generate an absurd result contrary to the statutory mandate and one which we cannot condone. A contrary result would only serve to encourage FIGA to operate contrary to the statutory duties and undermine the legislative plan.
On this basis, FIGA would be responsible in the instant matter for the $25,000 limit of liability plus, pursuant to the supplementary payment coverage provision, any interest owed on the underlying judgment entered against insured. The interest owed would accrue until paid. However, given the statutory limit of FIGA's liability, the total amount owed including this supplementary payment coverage would be capped at $300,000 less $100, or $299,900.
One may argue that the supplementary payment provision at issue in the instant matter precludes an assessment of interest against Dealers, or FIGA by imputation, because it specifies that Dealers has a duty to pay interest only in the legal actions it defends. However, any such interpretation would contravene well-established principles of contractual construction. As previously stated, courts are required to read provisions of a contract harmoniously to give effect to all portions thereof. See City of Homestead, 760 So.2d at 84. The supplementary payment provision goes hand in hand with the provision through which Dealers assumed the exclusive right and duty to defend Pratt. Permitting FIGA or Dealers to avoid the contractual obligation for reimbursement of the judgment flowing from an abdication of its duty to defend by adopting FIGA's interpretation of at best conflicting statutory provisions with regard to the supplementary payment coverage provision would effectively negate the duty to defend clause, leaving the insured virtually unprotected.
Finally, FIGA would be liable for any post-judgment interest accruing on any judgments entered directly against FIGA. Although the subject has not been addressed by this Court, the district courts have determined that FIGA is liable for interest assessed following a judgment against the Association. See, e.g., Carballo, 407 So.2d at 607; Gustinger, 390 So.2d at 421 & n. 2.

Attorneys' Fees
Jones moves for attorneys' fees incurred during proceedings before this Court as well as those before the First District, and asks that the First District's order denying fees be reversed. Section 631.70 of the Florida Statutes provides that attorneys' fees shall not be applicable to any claim presented to FIGA, except where the Association denies a covered claim by affirmative action other than delay. As stated throughout the analysis of this case, we determine that FIGA impermissibly refused coverage and failed to satisfy its statutory and underlying contractual responsibility to defend Pratt in the underlying wrongful death case, and that FIGA's claims attempting to contest *457 the existence of coverage in the instant matter lack merit. Consequently, we conclude that FIGA clearly denied a covered claim by affirmative action and that Jones is entitled to attorney fees in connection with this matter.

CONCLUSION
For the reasons stated herein, we quash the decision of the district court of appeal along with the decision to deny attorney fees. We remand the case to the district court with instructions to remand to the circuit court with further instruction to reinstate final summary judgment in favor of Jones and to recalculate the damage and interest award in accordance with the parameters set forth in this opinion. We also instruct the district court to enter an order awarding attorney fees and to remand the issue to the trial court for a determination of the amount of fees for the proceedings at the trial level, intermediate appeal, and before this Court.
It is so ordered.
PARIENTE, C.J., and ANSTEAD, LEWIS, and QUINCE, JJ., concur.
CANTERO, J., dissents with an opinion, in which WELLS and BELL, JJ., concur.
CANTERO, J., dissenting.
Although we initially granted review because of an apparent express and direct conflict between two district courts on the same question of law, see Jones v. Fla. Ins. Guar. Ass'n, 861 So.2d 429 (Fla.2004) (granting review), further analysis reveals no conflict. I would therefore discharge the petition for review as improvidently granted. See, e.g., Bateman v. State, 446 So.2d 97, 97 (Fla.1984) ("After reading the briefs on the merits and hearing oral argument, we conclude that the . . . decision before us does not expressly and directly conflict with [another district court decision].").
The majority concludes that the decision below, Florida Insurance Guaranty Ass'n v. Jones, 847 So.2d 1020 (Fla. 1st DCA 2003), expressly and directly conflicts with Florida Insurance Guaranty Ass'n v. Giordano, 485 So.2d 453 (Fla. 3d DCA 1986), on the same question of law. Majority op. at 438. That question, according to the majority, is whether the Florida Insurance Guaranty Association (FIGA) may be sued for failing to defend its insured against a claim that "alleges facts that fairly and potentially bring the suit within policy coverage." Majority op. at 443. The majority appears to conclude that the First District answered no in Jones, whereas the Third District answered yes in Giordano. Majority op. at 445-47. The majority, however, overlooks a crucial distinction between the two decisions.
In Jones, FIGA concluded that the claims against its insured were not covered by the FIGA Act. FIGA therefore refused to defend them. 847 So.2d at 1021. After a default judgment was entered against the insured, the insured's assignee brought suit against FIGA for failing to defend the claims. Id. The district court disallowed recovery after concluding that the assignee's claims were "not covered obligations under the FIGA Act and [were] barred by FIGA's immunity protection." Id. at 1022 (citing Fernandez v. Florida Insurance Guaranty Ass'n, 383 So.2d 974 (Fla. 3d DCA 1980)).
Giordano, the allegedly conflicting case, involved a different issue. In that case, FIGA did not dispute that the claim was covered. 485 So.2d at 456. Rather, it refused to defend the claim because its insured was incorporated in Illinois. FIGA argued that "it was an `excess' carrier over [the Illinois Guaranty Fund's] limits *458 and that it would decide what [to] do once IGF paid its statutory limits." Id. at 455 n. 1. The fact that FIGA conceded coverage was critical to the district court's conclusion that FIGA could be sued for refusing to defend its insured: "Since FIGA did not dispute that the wrongful death action was a `covered claim,' then under the statute, FIGA had no discretion as to whether it would defend the insured. . . . FIGA was under a statutorily imposed duty to continue the defense of the insured." Id. at 456.
No express and direct conflict exists between Jones and Giordano because they considered different issues under different circumstances. Jones held that FIGA (1) had no statutory duty to defend certain claims that it identified as uncovered, and (2) was immune from liability for refusing to defend those claims. Giordano, in contrast, held that FIGA (1) has a "statutorily imposed duty" to defend concededly covered claims, and (2) may be held liable for refusing to do so. Neither district court would need to recede from its holding in order to reach the result in the other court's decision, because FIGA's concession of coverage in Giordano distinguishes the cases.
The majority defends its review of this case by asserting that what "creates the conflict" between Jones and Giordano is that the district court in Jones put "the cart before the horse." Majority op. at 447. By this, the majority apparently means that the district court allowed FIGA's own coverage determination to dictate whether it had a duty to defend, whereas the majority believes that "it is the nature of the underlying claim [not FIGA's coverage determination, or even the ultimate resolution of the claim] that drives the duty to defend analysis." Id.
I cannot locate this "cart before the horse" analysis anywhere in Jones. Jones states merely that the duty-to-defend claims against FIGA were "not covered obligations under the FIGA Act." 847 So.2d at 1022. As the majority admits, there is "very little or no analysis" to explain this holding. Majority op. at 442. Perhaps, as the majority speculates, the district court allowed FIGA's coverage determination to drive its duty-to-defend analysis. Or perhaps the court focused properly on whether the underlying claims were "fairly and potentially . . . within policy coverage." Majority op. at 443. Staying within the four corners of the opinion, as we must for purposes of determining jurisdiction, it is impossible to know what drove the district court's analysis and therefore impossible to locate a conflict. See Hardee v. State, 534 So.2d 706, 708 n. * (Fla.1988) ("[F]or purposes of determining conflict jurisdiction, this Court is limited to the facts which appear on the face of the opinion.").
The majority seems to rule out the possibility that the district court followed the proper test in Jones, because it concludes that it was "absolutely clear" from the complaint that the claims were potentially covered. Majority op. at 444. Thus, the majority assumes that the district court must have blindly deferred to FIGA's own coverage determination, effectively "immuniz[ing] FIGA's decisions with regard to whether a claim . . . is covered." Majority op. at 447. Again, this inference is based on facts beyond the four corners of the Jones opinion. Looking strictly at the opinion, it is entirely plausible that the district court applied the proper duty-to-defend standard, but simply concluded that the claims against FIGA's insured were not "fairly and potentially . . . within policy coverage." Majority op. at 443. Such a conclusion would have been incorrect in the majority's view, but it would not supply a basis for conflict with Giordano, *459 because Giordano did not address the issue of potential coverage. Coverage was conceded.
As a court of limited jurisdiction, we do not have authority to correct every district court holding we think is wrong. Stevens v. Jefferson, 436 So.2d 33, 36 (Fla.1983) (Boyd, J., dissenting) (noting that the Florida Constitution reflects a "determination by the legislature and the people that this Court should not be able to review any decision it pleases"). In other words, we must get the right case before we can get the case right. This is not it. Because I conclude that this case falls outside our jurisdiction under article V, section 3(b)(3), Florida Constitution, I respectfully dissent.
WELLS and BELL, JJ., concur.
NOTES
[1] Particular to the facts of the matter on review, we conclude that Jones' complaint did indeed fairly and potentially bring the action within the ambit of the insured's policy coverage. Moreover, we determine that the coverage defenses FIGA raises in the instant context were either decided adversely to FIGA in entry of the judgment in the underlying action or were properly rejected by the trial court.
[2] FIGA alleged that (i) Althea Jones was comparatively negligent in causing the injuries leading to her death; (ii) her injuries were caused solely by parties beyond FIGA's control, including other vehicles on the roadway; and (iii) her injuries were caused by the intervening actions or negligence of third parties not under FIGA's control.
[3] Subsequent to Reserve's insolvency, FIGA "made three contradictory statements" as to its position regarding coverage. Giordano, 485 So.2d at 455 n. 1. As noted by the district court, FIGA first asserted that it had no responsibility whatsoever to the insured valve company; FIGA later took the position that it was an excess carrier over IGF's limits; and, finally, FIGA informed the plaintiff's attorneys that it would provide $150,000 coverage "excess over IGF." Id.
[4] Similar to our FIGA Act, the Washington act is modeled on a national uniform act for insurance guaranty associations. See id. at 243.
[5] The Ramsey court distinguished Fernandez on the basis that the decision did not address whether FIGA could be sued on its statutory obligations. The Ramsey court correctly opined that to the extent Fernandez was an action to enforce FIGA's statutory obligations, the Florida court had misinterpreted the statutory immunity provision. See 922 P.2d at 246.
[6] The plaintiff in the underlying negligence action sought reimbursement for the settlement amount under the state's unfair and deceptive trade practices act, and under the theories of intentional infliction of emotional distress and common law bad faith. See Isaacson, 244 Cal.Rptr. 655, 750 P.2d at 300.
[7] The Kinsey court certified a conflict with Johnson. This Court initially accepted the case, but subsequently discharged jurisdiction as improvidently granted. See Steele v. Kinsey, 840 So.2d 1023 (Fla.2003).