979 So.2d 964 (2008)
FLORIDA INSURANCE GUARANTY ASSOCIATION, INC., Appellant,
v.
Sandra L. SOTO, Appellee.
No. 3D07-614.
District Court of Appeal of Florida, Third District.
January 23, 2008.
Rehearing and Rehearing Denied May 15, 2008.
*965 Cole Scott & Kissane and Scott A. Cole and Luisa M. Linares, Miami, for appellant.
Ver Ploeg & Lumpkin and Stephen A. Marino, Jr. and Christine A. Gudaitis, Miami, for appellee.
Before COPE, WELLS, and SALTER, JJ.
Rehearing and Rehearing En Banc Denied May 15, 2008.
SALTER, J.
Florida Insurance Guaranty Association, Inc. (FIGA) appeals a circuit court order granting a motion by Sandra Soto to: (1) substitute FIGA as defendant in place of an insolvent insurer;[1] and (2) enforce a December 7, 2000 settlement agreement between that insurer and Soto. Finding no error in the trial court's rulings, we affirm.
Soto, Plaintiff below and Appellee here, sued Fortune Insurance in 1997 after her car was stolen. In the December 7, 2000 settlement agreement, Fortune agreed to pay Soto $25,000, as well as her attorney's fees and costs in an amount to be determined by the court. In accordance with the settlement, Fortune paid the $25,000. The parties exchanged general mutual releases which preserved Soto's entitlement to attorney's fees and costs when computed by the court. In January of 2001, Soto's attorneys filed and served verified motions for their fees and costs.
Before the motions were heard, however, Fortune became insolvent and entered a rehabilitation and liquidation proceeding administered by the Florida Department of Financial Services.[2] Under Florida's statutory insurer liquidation system, FIGA became directly liable to Fortune's insureds "to the extent of the covered claims" existing before the insurer was adjudicated insolvent. § 631.57, Fla. Stat. (2001).
In 2002, the trial court awarded $112,801.50[3] to Soto's attorneys and expert witness pursuant to the settlement agreement.
Ultimately Soto obtained an order from the circuit court in Tallahassee, which was administering the insurer's liquidation, determining that she could pursue enforcement of her settlement agreement against FIGA in the original lawsuit in Miami. FIGA took the position, however, that the attorney's fees and costs payable under the pre-insolvency settlement agreement were not a "covered claim" eligible for payment by FIGA.
*966 The trial court correctly disagreed with FIGA's interpretation of the statutes and cases. We review the court's interpretation de novo.
The purpose of the FIGA Act is "to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer." § 631.51(1), Fla. Stat. (2001); see also Jones v. Fla. Ins. Guar. Ass'n, Inc., 908 So.2d 435, 442 (Fla.2005). We are to liberally construe the law to effect that purpose. See § 631.51, Fla. Stat. (2001). In short, "[t]he act is designed to protect Florida citizens, not the insurance industry." Jones, 908 So.2d at 442.
"Covered claim" means an unpaid claim arising out of and covered by a policy issued by the insolvent insurer. § 631.54(3), Fla. Stat. (2001). In this case, there is no doubt that Soto's original claim against the insolvent insurer arose from a policy and that it was covered. In Florida, automobile insurance policies are subject as a matter of law to the obligation to reimburse an insured for attorney's fees and costs if the insured prevails in a lawsuit for payment of a claim under the policy. Id. at § 627.428. The Florida Supreme Court has held that section 627.428 is an implicit part of all insurance policies of the kind involved here. See State Farm Fire & Cas. Co. v. Palma, 629 So.2d 830, 832 (Fla.1993). It follows that Soto's stipulated but unpaid attorney's fee judgment is a "covered claim" within the meaning of subsection 631.54(3).
The original insurer, Fortune, acknowledged its obligations by settling for two payments: (1) a fixed amount immediately; and (2) an unliquidated amount of attorney's fees and costs when calculated by the court. The contractual obligations of the original insurer merged into the judgments approving that settlement and liquidating the claim amount.[4] While FIGA is not responsible for further attorney's fees and costs incurred by the insured under section 627.428 after the insolvencysection 631.70 allows an exception as to post-insolvency fees and costs incurred by the insured when FIGA wrongly denies a claimit is not relieved of the obligation to pay the insured's attorney's fees and costs incurred pre-insolvency for prevailing on a "covered claim." To so hold would be to disregard the remedial purposes of the FIGA statute and to place the insured in a worse position, not the same position, than the insured occupied pre-insolvency with regard to the operative insurance policy.[5]
FIGA also argues that we should be guided by the analysis in Florida Ins. Guar. Ass'n, Inc. v. All The Way With Bill Vernay, Inc., 864 So.2d 1126 (Fla. 2d DCA 2003). In that case, Reliance Insurance was the defunct insurer and Vernay the insured. Before Reliance's insolvency, Linkous brought a lawsuit against Vernay. Reliance refused Vernay's demand to provide a defense for, and to indemnify, Vernay regarding the lawsuit under the terms of the insurance policy issued by Reliance to Vernay. Vernay then filed a coverage action seeking a declaratory judgment against Reliance to establish Vernay's *967 rights to a defense and indemnity. Thereafter, Reliance was declared insolvent and FIGA was substituted as the defendant in the coverage action brought by Vernay. After Vernay prevailed in the underlying Linkous lawsuit against Vernay, Vernay obtained a summary judgment against FIGA in the coverage action for Vernay's attorney's fees and costs incurred in the Linkous action.
The Second District Court of Appeal reversed, finding that Vernay's attorney's fees and costs were not "within the coverage" of the policy. Id. at 1130. The particular policy language in that case specified that Reliance would only pay reasonable expenses incurred by Vernay at Reliance's request. Because neither Reliance nor FIGA had made such a request, the court held that the attorney's fees were not a "covered claim" under subsection 631.54(3).
In the instant case, Fortune already had agreed (in the form of the stipulated judgment) that Soto's claims for the theft of her auto, and for her attorney's fees and costs were payable under her policy. To accept FIGA's position now would allow FIGA to accept one part of the settlement agreement between Soto and Fortune (the $25,000 lump sum already paid by Fortune pre-insolvency, involving no further obligation on FIGA's part) and to reject the balance of the settlement agreement (the stipulated liability for attorney's fees and costs). Such a result would not be fair and would not further FIGA's mandate under subsection 631.51(1), "to avoid financial loss to claimants or policyholders because of the insolvency of an insurer."
Affirmed.
NOTES
[1] Fortune Insurance Company, which consented to rehabilitation and a receivership on grounds of insolvency in May 2001.
[2] The Florida Department of Insurance was originally the receiver, but that entity was reorganized to become part of the Florida Department of Financial Services in 2003.
[3] The insurer's delay and refusal to pay Soto's claim following the theft of her car was further complicated when the lien claimant on the vehicle issued adverse credit reports against Soto. Fortune settled directly with the lien claimant, and added a third party claim against the lender when the lender refused to indemnify Fortune. These developments resulted in attorney's fees and costs significantly in excess of a typical automobile insurance dispute. The trial court found, however, that all such fees and costs were incurred on behalf of Soto and were reasonable. FIGA does not dispute the amount of the award.
[4] The original policy claim was extinguished and merged into the stipulated judgment; the rights under the judgment were substituted for the previously-operative contract rights. See Whitehurst v. Camp, 699 So.2d 679, 684 n. 2 (Fla. 1997).
[5] Bankruptcy trustees are sometimes said to have by law "no conscience and no memory" so that they are free to reject contracts and avoid liens incurred by the insolvent debtor. FIGA, on the other hand, is required to ascertain, evaluate, and pay the insolvent insurer's specified obligations to policyholders within the limits set by law.