**WPC INDUSTRIAL CONTRACTORS, LTD., a Florida corporation, Plaintiff,**

v.

**AMERISURE MUTUAL INSURANCE CO., A foreign corporation, Defendant.**

Case No. 08–10101–CIV.

United States District Court, S.D. Florida.

Oct. 21, 2009.

Bryan W. Black, Derrevere & Associates, West Palm Beach, FL, for Plaintiff.

Frank Bradley Hassell, Ashleigh Jennifer Smith, Hassell Moorhead & Carroll, Daytona Beach, FL, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Defendant's Motion for Summary Judgment (dkt. # 32).

UPON CONSIDERATION of the Motion, the Responses, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

### I. BACKGROUND

This case involves an insurance coverage dispute arising out of damage to a home and bodily injury allegedly caused by raw sewage backing up in the home.[1] Plaintiff WPC Industrial Contractors, Ltd. ("WPC") is an environmental construction management company that specializes in the construction of water treatment plants. In 1999, the Florida Legislature required that sewage systems in the Florida Keys be converted from septic tank systems to waste water treatment systems. *See* § 381.0065, Fla. Stat. Pursuant to the sewage conversion, the Village of Islamorada hired WPC to act as general contractor in the construction of a waste water treatment facility and sewer collection system, or sewer lines leading to the treatment facility. WPC completed its work in 2006, and the sewage system went into use in the summer of 2006. From January 1, 2006, to January 1, 2007, WPC was covered by a Commercial General Liability policy (the "CGL Policy") issued by Defendant Amerisure Mutual Insurance Company ("Amerisure"). *See* CGL Policy No. GL2017104020006 (dkt. # 1, at 12–85).

---

1. The facts here are taken from the pleadings and attached documents and appear to be largely undisputed. In resolving the duty to defend claim, however, this Court will rely only upon facts alleged in the Complaint.

Beginning in August of 2006, Christine Harris ("Harris"), a resident of Islamorada, alleges that she experienced sewage backups in her home. The sewage backups continued through November of 2006. In December of 2006, David Lanfrom ("Lanfrom"), a biologist, informed Harris that her house was contaminated with fecal contaminate and was unsafe to live in. The Harris family also became ill in December of 2006 and attributed their illness to exposure to fecal contaminate from the sewage backups. The Harris family subsequently vacated the house and took up residence in a motel.

In January of 2007, the "Health Department" visited Harris' home and concluded it was contaminated. Harris Compl. ¶ 20 (dkt. # 1, at 86–96). Shortly thereafter, WPC hired Advanced Cleaning Systems "to remove [the Harris'] personal items from the house and to tear down the walls to get rid of the contamination." *Id.,* ¶ 21. Lanfrom returned to the house in February of 2007. After conducting a random sampling he concluded that the house was still contaminated. In March of 2007, the sewer backed up again. "As a result of the fecal contaminate, the [Harris family] has not been able to return to their home." *Id.,* ¶ 27.

In March of 2008, Harris filed a Complaint against WPC in the Circuit Court of the 16th Judicial Circuit in and for Monroe County, Florida. Harris brought claims on behalf of herself and her children for negligence, resulting in property damage and bodily injury, and for intentional infliction of emotional distress. In response to Harris' claim, WPC sought coverage from Amerisure under the CGL Policy. Amerisure denied WPC's claim. WPC then filed a Complaint (dkt. # 1, at 8–11) in the Circuit Court of the 16th Judicial District in and for Monroe County, Florida, seeking (1) a declaration that Amerisure has a duty to defend WPC in Harris' suit against WPC, and (2) a declaration that WPC is entitled to coverage under the CGL Policy. On November 20, 2008, Amerisure removed the action to this Court.

## II. STANDARD OF REVIEW

The applicable standard for reviewing a summary judgment motion is unambiguously stated in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Summary judgment may be entered only where there is no genuine issue of material fact. *Twiss v. Kury,* 25 F.3d 1551, 1554 (11th Cir.1994). The moving party has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir.1997). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.*

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Id.* However, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be

evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III.  ANALYSIS

WPC claims that Amerisure has a duty to defend it in Harris' action against WPC. WPC further claims it is covered by the CGL Policy and the Limited Pollution Reimbursement-"Work Sites" Endorsement and that none of the policy exclusions apply. Amerisure contends that is has no duty to defend WPC and that coverage is precluded by the Pollution Exclusion, the Fungi or Bacteria Exclusion, and that the Limited Pollution Reimbursement-"Work Sites" Endorsement does not apply.

### A.  *Duty to Defend*

■ It is well settled that an insurer's duty to defend its insured against a legal action arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage. The duty to defend must be determined by allegations in the complaint. The duty to defend is of greater breadth than the insurer's duty to indemnify, and the insurer must defend even if the allegations in the complaint are factually incorrect or merit less. Indeed, when the actual facts are inconsistent with the allegations in the complaint, the allegations in the complaint control in determining the insurer's duty to defend. Any doubts regarding the duty to defend must be resolved in favor of the insured.

*Hartford Acc. & Indem. Co. v. Beaver*, 466 F.3d 1289, 1292 (11th Cir.2006) (quoting *Jones v. Fla. Ins. Guar. Ass'n*, 908 So.2d 435, 442–43 (Fla.2005)) (internal citations and quotation marks omitted); *see also Prudential Prop. & Cas. Ins. Co. v. Calvo*, 700 F.Supp. 1104, 1105 (S.D.Fla.1988) (stating that insurer's duty to defend is governed by allegations in the underlying complaint against the insured). Although an insurer has a duty to defend when some allegations in the complaint arguably fall within coverage of the policy, there is no duty to defend where the complaint shows either that there is no coverage or that a policy exclusion applies. *Calvo*, 700 F.Supp. at 1105. "Thus, the central inquiry in a duty to defend case is whether the complaint 'alleges facts that fairly and potentially bring the suit within policy coverage.'" *Id.* (quoting *Jones*, 908 So.2d at 443).

1. Coverage Under the Limited Pollution Reimbursement—"Work Sites" Endorsement

Amerisure argues that the Limited Pollution Reimbursement—"Work Sites" Endorsement (the "LPR Endorsement") provides no coverage for Harris' claim against WPC. The LPR Endorsement provides, in relevant part:

b.  This insurance applies to "bodily injury", "property damage", "environmental damage" and "defense expenses" only if:

(1) The "bodily injury", "property damage" or "environmental damage" is caused by a "pollution incident" on or from "your work site" in the "coverage territory":

(a) that results from "pollutants" brought on to such site by any insured or any contractor or subcontractor performing operations directly or indirectly on any insured's behalf;

(b) that is demonstrable as beginning and ending within 72 hours; and

(c) that is accidental.

CGL Policy, LPR Endorsement, Section I, (A)(1)(b)(1). "'Your work site' means any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf were working on such premises, site or location." *Id.*, Section V " 'Pollution incident' means the actual or alleged emission, discharge, release, or escape of 'pollutants' from 'your

work site' provided that such emission, discharge, release or escape results in 'environmental damage.' All 'bodily injury', 'property damage' and 'environmental damage' arising out of one emission, discharge, release or escape will be deemed to be one 'pollution incident'." *Id.* " 'Environmental damage' means the injurious presence of 'pollutants' in or upon land, the atmosphere, or any watercourse or body of water." *Id.*

■■■ The first issue is whether the alleged "bodily injury" and "property damage" was caused by the discharge of a "pollutant" on or from "[WPC's] work site." Fecal contaminant is a "pollutant" within the meaning of the CGL Policy because it is a solid irritant and contaminant, which falls within the CGL Policy's definition of a "pollutant." *Philadelphia Indem. Ins. Co. v. Yachtman's Inn Condo Ass'n, Inc.,* 595 F.Supp.2d 1319, 1324 (S.D.Fla.2009) (finding that feces and raw sewage is waste that is a pollutant within the meaning of a CGL policy's definition of "pollutant"). WPC's work site includes the areas in which they performed their duties in the course of carrying out their obligations as·contractor for the construction of Islamorada's waste water treatment facility and sewer collection system. WPC did not, however, connect the Harris' home to the sewer collection system. Harris Dep., at 15 (dkt. # 36–1). The Harris' home was connected to the sewer collection system by Freewheeler, a company unrelated to WPC and hired by the Harris family. *Id.,* at 15–16.

At some point, the sewage that was allegedly discharged into the Harris' home may have been in the sewage collection system that WPC built. The sewage would have then traveled through the connection that Freewheeler installed that linked the sewage collection system with the Harris' home and discharged into the home. Had the sewage discharged directly from the sewer collection system that WPC constructed, there is no doubt that the discharge would have occurred on or from [WPC's] work site. However, given that the discharge occurred at the opposite end of the connection between the sewage collection system and the Harris' home, a linkage that WPC did not build, the discharge did not occur on or from WPC's work site.

Although the sewage may have been inside of the sewage collection system at some point, and thus may have been within WPC's work site, at the time and place of the discharge in the Harris' home, the sewage had moved outside of WPC's work site. By way of analogy, if a gasoline truck delivers gasoline to a gas station, and the gas subsequently leaks from a defective storage tank at the gas station, the pollution discharge would not have been on or from the gasoline truck, just because the gasoline truck was the source of the gasoline delivery. Likewise, the fact that the sewage originated in the sewage collection system does not mean that the discharge was on or from WPC's work site, where the discharge occurred at a location external to the work site. To suggest otherwise would require an interpretation of WPC's work site to include every household and business connected to every sewer line leading to the treatment facility. There is no basis for concluding that the language of the LPR Endorsement can be construed to give WPC's work site such an expansive interpretation. Therefore, the discharge was not on or from WPC's work site, merely because the sewage collection system may have been the source of the sewage. Accordingly, there is no coverage under the LPR Endorsement because there was no "pollution incident" on or from WPC's work site.

2. The Pollution Exclusion

■■■ Amerisure contends that it has no duty to defend WPC because the pollution

exclusion definitively bars coverage.[2] The CGL Policy's Total Pollution Exclusion with a Building Heating Equipment Exception, Hostile Fire Exception and Contractor Job Site Exception Endorsement (the "Pollution Exclusion") states, in relevant part:

> f. Pollution
>
>   (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time . . .

CGL Policy, Pollution Exclusion, ¶ 2(f) (dkt. # 1, at 50).[3] "Pollutant" is defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." *Id.* at Section V, ¶ 15. Waste includes "materials to be recycled, reconditioned or reclaimed." *Id.*

The CGL Policy's Pollution Exclusion requires that the "property damage" or "bodily injury" arise out of the "actual or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." CGL Policy, Pollution Exclusion, ¶ 2(f)(1). Fecal contaminant is a "pollutant" within the meaning of the CGL Policy because it is a solid irritant and contaminant, which falls within the CGL Policy's definition of a "pollutant." *Yachtman's Inn,* 595 F.Supp.2d at 1324. Harris claims that the property damage to her house, and bodily injury to herself and her family, was caused by fecal contaminate from sewer backups. Harris Compl. ¶¶ 14–15, 17–21, 23, 25, 27. Thus, the Pollution Exclusion applies because Harris alleges that the property damage and bodily injury was caused by the discharge or dispersal of a pollutant. Therefore, Amerisure has no duty to defend.

## IV. CONCLUSION

Based on the foregoing, it is

ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment (dkt. # 32) is GRANTED.

---

**2.** Amerisure does not argue that the main coverage form of the CGL Policy does not provide coverage. Thus, aside from the analysis pertaining to the LPR Endorsement, this Court will proceed upon the assumption that claims for which WPC seeks coverage constitute bodily injury or property damage caused by an occurrence that took place in the coverage territory.

**3.** The Florida Supreme Court has held that the absolute pollution exclusion found in CGL policies is clear and unambiguous. *Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.,* 711 So.2d 1135, 1138 (Fla.1998) (holding that "[w]e, too, agree that the pollution exclusion clause is clear and unambiguous").