**MARYLAND CASUALTY COMPANY,**
**Plaintiff,**

v.

**FLORIDA ATLANTIC ORTHOPEDICS, P.L. f/k/a Florida Atlantic Orthopedics, LLC, et al., Defendants.**

Case No. 10–CV–80203.

United States District Court,
S.D. Florida,
West Palm Beach Division.

Feb. 24, 2011.

---

Sina Bahadoran, partner, Todd M. Davis, Associate—Hinshaw & Culbertson, LLP, for Plaintiff Maryland Casualty.

Jay Cohen—Law Office of Jay Cohen, P.A., for Defendants the Mahbears.

Mark Wayne Klingensmith—Sonneborn Rutter Cooney & Klingensmith, P.A., for Defendant Florida Atlantic.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

KENNETH L. RYSKAMP, District Judge.

**THIS CAUSE** comes before the Court on plaintiff Maryland Casualty Company's motion for summary judgment [DE 26] filed on December 1, 2010. The Mahbear defendants [1] filed a response in opposition [DE 27] on December 20, 2010. Defendant Florida Atlantic Orthopedics filed a response in opposition [DE 29] on December 22, 2010. On January 10, 2011, Maryland Casualty filed a reply [DE 33] to the Mahbears' response and a reply [DE 34] to Florida Atlantic's response. The Court held a hearing [DE 42] on January 31, 2011. This matter is ripe for adjudication.

### I. Background

Maryland Casualty issued a commercial and general liability insurance policy to Florida Atlantic Orthopedics, LLC under policy number PAS 02959205 ("Policy") with an effective policy period of May 1, 2008 until cancelled or non-renewed. The policy insured Florida Atlantic against any loss or liability occurring as a result of bodily injury to third parties subject to policy limits. The policy expressly states that Maryland Casualty has "no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this issuance does not apply...." See [DE 25] at Ex. D. The policy also contains two specific exclusions which exclude coverage for injuries sus-

tained by third persons in certain situations. The professional services exclusion excludes coverage for bodily injuries "arising out of the rendering or failure to render any professional service, including but not limited to ... medical cosmetic, dental, ear piercing, hair dressing, massage, physical therapy, veterinary, nursing, surgical, or x-ray services, advice and instruction...." The health care services exclusion excludes coverage for bodily injuries "arising out of the rendering or failure to render .... medical, surgical, dental, x-ray, or nursing service, treatment, advice, or instruction ... [or] any health or therapeutic service, treatment, advice, or instruction." See [DE 25–4].

On March 13, 2008, the decedent, Jacqueline Dixon, injured her neck and back in a car accident. On May 29, 2008, she went to Florida Atlantic for an orthopedic surgical consultation. Dr. Roberto Mayo recommended that she undergo a discogram and lumber facet ablation. On June 28, 2008, Ms. Dixon underwent surgery in the Florida Atlantic office. At the conclusion of her surgery, Ms. Dixon "became unresponsive with an 02 saturation of 60%. Her heart rate decreased to 30 beats per minute and she became pulseless." See [DE 25–1] at 19. She was then transferred to the center's post anesthesia care unit where her face swelled and she had only a faint pulse. Ms. Dixon was then moved, without a pulse, back to the operating room and placed on a ventilator. Thereafter, Florida Atlantic professional staff administered CPR and called 911. Upon arrival, the Boca Raton fire rescue team had to transfer Ms. Dixon via the stairs from the second floor of the building to the ambulance because the elevator was too small for a stretcher. The decedent

---

**1.** The Mahbear defendants are: Melissa Mahbear, individually and as personal representative of the estate of Jacqueline Dixon, Ana-

Shari Mahbear, Adrian Mahbear, Jhony Mahbear, and Asoney Mahbear.

arrived at Boca Raton Community Hospital in cardiac arrest. The decedent later died at the hospital on July 9, 2008.

The Mahbears filed suit against Florida Atlantic and other defendants in Broward County court. In the state court complaint, the Mahbears alleged a variety of claims against Florida Atlantic. For the purposes of this motion, however, the only relevant claims are those for premises liability (Count X), failure to have appropriate policies and procedures for emergency situations (Count XI), and negligent retention and supervision (Count XII).[2] The Mahbears satisfied all conditions precedent to bring suit.

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(c), "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "The movant bears the initial responsibility of informing the district court of the basis for its motions, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To meet this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. To do so, the moving party should cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declara-

tions, stipulation (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A).

After the movant has met its burden under Rule 56(c), the burden of production shifts, and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party may not rest upon the mere allegations or denials of the adverse party's pleadings, but instead must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348; Fed.R.Civ.P. 56(c)(1).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A mere scintilla of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.

"Summary judgment is appropriate in declaratory judgment actions seeking a declaration of coverage when the insurer's

---

**2.** The state court complaint also contains claims against Florida Atlantic for vicarious liability for the medical malpractice of their doctors (Count I, III, V, VII) and for negligent misrepresentation (Count IX) regarding the failure to advise the decedent that Dr. Rodenberg had previously been reprimanded for medical malpractice. Maryland Casualty

seeks a declaration that it does not have to defend the suit in state court, but focuses solely on Counts X, XI, and XII. Apparently, the parties do not dispute that the claims for vicarious liability would be excluded under both the health care and the professional services exclusions. The Court agrees.

duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law." *Northland Cas. Co. v. HBE Corp.*, 160 F.Supp.2d 1348, 1358 (M.D.Fla.2001); *see also Nat'l Union Fire Ins. Co. v. Brown*, 787 F.Supp. 1424, 1427 (S.D.Fla.1991) (insurer's duty rests upon the legal effect of the policy terms and the interpretation of the policy is an issue of law to be decided by the Court).[3]

## III. Analysis

The issue before the Court is whether the health services and professional services policy exclusions relieve Maryland Casualty of its duty to defend Florida Atlantic against the Mahbears' claims of premises liability (Count X), failure to have appropriate emergency procedures (Count XI), and negligent retention and hiring (Count XII).

 Under Florida law, the duty to defend is determined by examining the allegations in the underlying complaint filed against the insured. *Lime Tree Vill. Cmty. Club Ass'n v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir.1993). "An insurer has a duty to defend the insured when the alleged facts of the complaint fairly and potentially bring the suit within coverage." *Miranda Constr. Dev., Inc. v. Mid–Continent Cas. Co.*, 763 F.Supp.2d 1336, 1339, 2010 WL 5677913, *2 (S.D.Fla. Dec. 22, 2010) (citing *WPC Indus. Contractors, Ltd. v. Amerisure Mut. Ins. Co.*, 720 F.Supp.2d 1377, 1381 (S.D.Fla.2009)). Such a duty must be determined from the allegations in the underlying complaint. *WPC Indus.*, 720 F.Supp.2d at 1381. "Any doubt regarding the duty to defend must be resolve in favor of the insured." *Id.* There is, however, no duty to defend when the complaint shows that there is no coverage or that a policy exclusion applies. *Id.* While "policy provisions which tend to limit liability must be construed liberally in favor of the insured against the insurer ... where the language of a policy is clear and unambiguous on its face, the policy must be given full effect." *Id.* (citations omitted). "In the absence of ambiguity ... it is the function of the court to give full effect to the insurance contract as written." *Id.*

The Court finds that the policy language is not ambiguous. The policy, in pertinent part, states:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

### SECTION I—COVERAGES
### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply....

\* \* \* \* \* \*

2. **Exclusions**

---

3. Florida law applies to this action. *See Colony Ins. Co. v. Suncoast Medical Clinic, LLC*, 726 F.Supp.2d 1369, 1374–75 (M.D.Fla.2010) (Florida law applies in case where federal district court is sitting in diversity and the relevant insurance policy was issued in Florida); *see also Adolfo House Distr. Corp. v. Traveler's Prop. and Cas. Ins. Co.*, 165 F.Supp.2d 1332, 1335 (S.D.Fla.2001).

*This insurance does not apply to:* ...

o. **Professional**

 (1) "Bodily injury" or "property damage" arising out of the rendering or failure to render any professional service, including but not limited to:

 (b) Medical, cosmetic, dental, ear piercing, hair dressing, massage, physical therapy, veterinary, nursing, surgical or x-ray services, advice and instruction; ...

*See* [DE 25–4] at 90–91, 93

\* \* \* \* \* \*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

*EXCLUSION—SERVICES FURNISHED BY HEALTH CARE PROVIDERS*

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Description of Operations:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement).

The following exclusion is added to Paragraph 2., **Exclusion** of **Section I—Coverage A—Bodily Injury and Property Damage Liability** and Paragraph 2., **Exclusions** of **Section I—Coverage B—Personal and Advertising Injury Liability:**

With respect to any operation shown in the Schedule, does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. The rendering or failure to render:

 a. Medical, surgical, dental, x-ray or nursing service, treatment, advice or the related furnishing of food or beverages;

 b. Any health or therapeutic service, treatment, advice, or instruction; or

 c. Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming....

2. The furnishing or dispensing of drugs or medical, dental or surgical or appliances; or

3. The handling or treatment of dead bodies, including autopsies, organ donation, or other procedures.

*See* [DE 25–4] at 114.

According to the plain language of the policy, Maryland Casualty must pay, on behalf of Florida Atlantic, all sums Florida Atlantic becomes obligated to pay as damages because of bodily injury to which the insurance applies. The policy also requires that Maryland Casualty defend against any suit seeking damages for bodily injury. Importantly, however, the policy eliminates the duty to defend against suits seeking damages for bodily injury caused by events not covered under the Policy. Here, the policy, pursuant to its health services and professional services exclusions, eliminates coverage for bodily injury arising out of the rendering or failure to render medical, surgical, and health treatment. The question, therefore, is whether Ms. Dixon's injuries arose out of the rendering or failure to render medical, surgical or health treatment or the rendering or failure to render professional medical services? Maryland Casualty argues that, under these exclusions, it does not have a duty to defend Florida Atlantic because all of the Mahbears' claims arise out of Florida Atlantic's failure to properly render medical, surgical, or health treatment. Florida Atlantic and the Mahbears assert that Maryland Casualty has a duty

to defend the premises liability claim because it is unrelated to the Mahbears' allegations of negligent medical care and treatment.

■ First, the Court finds that Maryland Casualty is not required to defend Florida Atlantic against the Mahbears' claims of negligence (Count XI)[4] and negligent retention and hiring (Count XII). The attorney for the Mahbears conceded this at the hearing on the motion and Florida Atlantic made no argument to the contrary in their response to Maryland Casualty's motion for summary judgment. Hiring medical staff and implementing appropriate emergency procedures is an intricate part of the provision of medical services, which is excluded from coverage under the policy. *See Colony Ins. Co. v. Suncoast Medical Clinic, LLC,* 726 F.Supp.2d 1369, 1377 (M.D.Fla.2010); *see also Alpha Therapeutic Corp. v. St. Paul Fire & Marine Ins. Co.,* 890 F.2d 368, 371 (11th Cir.1989); *Alayon del Valle v. Kenyon,* No. 06–2105–CCC, 2009 WL 3299373, at *3 (D.P.R. Oct. 9, 2009). Accordingly, the Court finds that Maryland Casualty is relieved from any duty to defend Florida Atlantic against counts XI and XII of the state court complaint.

■ This leaves the premises liability claim (Count X). In that claim, which incorporates by reference all of the previously alleged factual allegations of medical malpractice, the Mahbears allege that Florida Atlantic breached its duty "to ensure that the ambulatory surgical center was free from dangerous conditions or operation; including, but not limited to, en-

suring an effective means of transferring patients to an appropriate medical facility in the event of an emergency...." *See* [DE 25–1] at 37. The claim also alleges that Florida Atlantic "knew or should have known that a dangerous condition existed prior to Jacqueline Dixon's surgery on June 25, 2008, in that emergency service personnel [was] unable to efficiently and effectively reach the facility on the second floor and appropriately transport patients to an Emergency Medical Center from the second floor ambulatory service center due to inadequate elevator access." *Id.* The claim ends by alleging that as a result of Florida Atlantic's negligence, the decedent "suffered horrendous complication of an elective surgical procedure on June 25, 2008, ultimately causing her death." *Id.*

Based on the factual allegations in the underlying state complaint, the Court finds that the exclusions in the policy clearly relieve Maryland Casualty from its duty to defend or indemnify Florida Atlantic on the premises liability claim. First, the transportation of patients in the case of an emergency is undoubtedly an integral part of the provision of medical services, particularly when those medical services include surgery. Defendants seek to separate the act of transporting someone to an emergency facility after surgical complications from the medical procedures which necessitated the transportation in the first place, asserting that "the physical dimensions of an elevator do not implicate decisions requiring medical skill integral to the provision of medical services or treatment." *See* [DE 27] at 4. This argument is spe-

---

**4.** Count XI, incorporates by reference all of the preceding factual allegations in the complaint and includes allegations that Florida Atlantic breached its duty to protect the decedent by: (1) "Failing to have in place appropriate policies and procedures for emergency situations during surgery;" (2) "Failing to maintain the appropriate standards of care for an ambulatory surgical center;" (3) "Failing to comply with Florida and Federal safety standards for ambulatory surgical centers;" and (4) "Failing to ensure that appropriately licensed physicians were designated to care and treat patients, such as Jacqueline Dixon." *See* **[DE 25–1]** at 38.

cious. An intricate part of the provision of medical services is the possible transportation of a critically ill patient to the hospital, including the decisions made regarding that transportation. Florida Atlantic rented space within a facility equipped with an elevator that was too small to accommodate the size of stretcher used by emergency medical personnel. Florida Atlantic chose to conduct surgery in this space and made the medical decision to do so, despite the existence of an elevator that was too small to accommodate a stretcher necessary for emergency transport. Injuries relating to this decision are excluded under the clear language of the policy and its exclusions and endorsements. As such, Maryland Casualty has no duty defend.

In finding that Maryland Casualty has no duty to defend against the premises liability claim, the undersigned is persuaded by the Texas case of *Duncanville Diagnostic Center, Inc. v. Atlantic Lloyd's Ins. Co. of Texas,* 875 S.W.2d 788 (Tex.App. 1994). In *Duncanville,* the insured appealed the trial court's finding that the insurer had no duty to defend a lawsuit because the action fell within both a professional services exclusion and a health services exclusion in the insurance policy. The decedent died after being administered a lethally high dosage of a sedative. The decedent's parents sued the center for wrongful death and malpractice and the center's insurer sought to be excused from its duty to defend the center. In upholding the trial court's holding that the center's insurer had no duty to defend the claims, the Texas Court of Appeals found that the proper focus in these types of cases is on the factual origin of the injury, and not on the labels placed on the claims by the plaintiff in the underlying action. Because the girl's injuries and death were alleged to have been ultimately caused by medical malpractice, the Court found that the exclusions applied and the insurer had no duty to defend claims relating to negli-

gent hiring or failure to have adequate policies and procedures at the center.

Here, it is clear from the state court complaint that the alleged factual origin of Ms. Dixon's injury, and ultimately her death, was medical malpractice during the surgical procedure. But for that medical malpractice, there would have been no need to use the elevator for a stretcher. While Maryland Casualty would have a duty to defend an ordinary premises liability claim, an insurer has no such duty when the alleged factual origin of the bodily injury was something otherwise excluded under the policy. The clear language of the policy excludes coverage for injuries arising out of medical procedures or the provision of professional medical services. Without a doubt, Ms. Dixon's injuries arose out of the surgical procedure performed by Florida Atlantic's doctors. Therefore, Maryland Casualty has no duty to defend against the premises liability claim.

## IV. Conclusion

The Court has carefully considered the motion, response, reply, applicable law, and pertinent portions of the record. For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that

(1) Plaintiff Maryland Casualty Insurance Company's motion for summary judgment **[DE 26]** is **GRANTED;**

(2) The Court will enter final judgment in favor of Maryland Casualty Insurance Company by separate order;

(3) Any pending motions are **DENIED** as moot; and

(4) The Clerk of Court is directed to **CLOSE THIS CASE.**