[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-13913

_____

D.C. Docket No. 3:09-cv-01135-HES-MCR

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 19, 2011
JOHN LEY
CLERK

TRAILER BRIDGE, INC.,
a Delaware corporation,

                                                      Plaintiff-Appellant,

versus

ILLINOIS NATIONAL INSURANCE COMPANY,
an Illinois corporation,

                                                      Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(September 19, 2011)

Before HULL and ANDERSON, Circuit Judges, and VINSON,* District Judge.

PER CURIAM:

_____

*Honorable C. Roger Vinson, United States District Judge for the Northern District of
Florida, sitting by designation.

Trailer Bridge, Inc., appeals the district court's grant of summary judgment in favor of Defendant Illinois National Insurance Co. on Plaintiff Trailer Bridge's complaint alleging that Illinois National failed to defend Trailer Bridge in an underlying antitrust action and thereby breached its commercial general liability insurance policy (the "Policy") issued to Trailer Bridge for the year July 2004 to July 2005.

Subject to certain conditions, Illinois National agreed in the Policy to pay any sums that Trailer Bridge became legally obligated to pay as damages because of "personal and advertising injury" and to defend Trailer Bridge against any suit seeking such damages. The Policy defines "personal and advertising injury" as "injury, including consequential 'bodily injury,' arising out of . . . [t]he use of another's advertising idea in your 'advertisement.'" Although failing to define "advertising idea," the Policy defines "advertisement" as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters."

In 2008, various entities sued Trailer Bridge and other defendants for conspiring to fix prices of cabotage services between the United States and Puerto Rico in violation of the Sherman Antitrust Act. In a section titled "Fraudulent

Concealment," the underlying antitrust complaint alleges that, between 2002 and April 2008, the defendants affirmatively concealed their unlawful activity. The complaint alleges that the defendants met in secret and issued materially false public statements about the reasons for rate and surcharge increases. As an example, the complaint alleges that Trailer Bridge's CEO noted in an interview "that customer decisions were driven by '[p]rice in an all-inclusive sense, which starts with the freight rate,' implying that Defendants could not rig bids or set and increase rates, surcharges or fees, and therefore were not doing so, or otherwise acting anti-competitively." The complaint asserts that this allegedly misleading statement was an attempt to conceal Trailer Bridge's ability to rig bids and effect supra-competitive rates.

In this case before the district court, Trailer Bridge argued that Defendant Illinois National owed a duty to defend the antitrust action under the Policy's coverage for "personal and advertising injury." Trailer Bridge pointed out that the CEO's interview was published in The Wall Street Transcript, a newsletter targeted at long-term investors. Trailer Bridge argued that the interview was an "advertisement" within the meaning of the Policy and that the CEO's statement deployed the "advertising idea" of "another" because the CEO's misleading

justifications for price increases must have originated with Trailer Bridge's competitors (and alleged co-conspirators).

Granting summary judgment, the district court concluded[1] that Defendant Illinois National had no duty to defend Trailer Bridge because (1) the CEO's allegedly misleading statement – made in an interview aimed at investors and describing general market conditions – was not an "advertisement" for the company, (2) even if the statement constituted an advertisement, the CEO's brief description of market conditions did not involve the use of an "advertising idea," (3) even if the CEO's statement was an advertising idea, the antitrust complaint failed to allege that the advertising idea "belonged to another," and (4) even if the antitrust complaint alleged an advertising injury under the Policy, the injury did not cause the antitrust plaintiffs' damages because the antitrust plaintiffs sought relief only for antitrust violations, not for misappropriation of an advertising idea.[2]

In this appeal, Trailer Bridge asserts an array of arguments on why the district court erred. But the arguments all stem from the central issue of whether the CEO's statement triggered the duty to defend under the "personal and

---

[1]The district court concluded, and neither party disputes, that Florida law applies to the construction and application of the Policy.

[2]The district court declined to address any exclusion in the Policy because it concluded, for purposes of summary judgment, that Illinois National had conceded that none of the exclusions was applicable.

advertising injury" provision in the Policy. After review and oral argument, we conclude that the district court did not err in granting summary judgment for Illinois National for the reasons set forth in the district court's thorough and well-reasoned order, which we adopt as our own.[3] For the convenience of the reader, we reproduce the district court's order as an appendix to this opinion.

In particular, we agree with the district court's rejection of Trailer Bridge's convoluted argument that the CEO's statement deployed the advertising idea of "another." The Policy defines "advertising injury" as an injury arising from "[t]he use of another's advertising idea in your 'advertisement.'" We reject Trailer Bridge's contention that the use of a co-defendant's (and alleged co-conspirator's) idea – as opposed to the idea of a plaintiff in the underlying antitrust action – could qualify as an "offense" under the Policy. See Rose Acre Farms, Inc. v. Columbia Cas. Co., 772 F. Supp. 2d 994, 1003 (S.D. Ind. 2011) (rejecting a similar argument and noting that research revealed no case in which "an underlying complaint for antitrust injury triggered an insurer's duty to defend for an advertising injury caused by . . . 'the use of another's advertising idea in your

---

[3]We note that the district court considered the entirety of the interview given by Trailer Bridge's CEO, and not just the part thereof referred to in the complaint. Even if that were error, see Jones v. Fla. Ins. Guar. Ass'n, Inc., 908 So.2d 435 (Fla. 2005), and even if we too accepted Trailer Bridge's invitation to consider the entire interview, our decision would be unchanged.

advertisement'"). The underlying plaintiffs sought only antitrust damages; they did not seek to impose any legal obligation upon the insured to pay them damages "because of . . . advertising injury." No facts were alleged in the underlying complaint on the basis of which the underlying plaintiffs might have recovered damages "because of . . . advertising injury"; and the underlying plaintiffs could not have recovered such damages because the allegedly misappropriated "advertising idea" was not that of the underlying plaintiffs, but rather was alleged to have been the advertising idea of other parties altogether.

**AFFIRMED.**[4]

---

[4] Trailer Bridge's request for certification to the Florida Supreme Court is **DENIED**.