[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14500
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cv-25344-PCH

JONES BOAT YARD, INC.,

Plaintiff-Appellant,

versus

ST. PAUL FIRE AND MARINE INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 8, 2018)

Before WILLIAM PRYOR, BRANCH and BLACK, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Jones Boat Yard, Inc. (JBY) appeals from the district court's grant of summary judgment in favor of Defendant-Appellee St. Paul Fire and Marine Insurance Company (St. Paul).  The district court concluded St. Paul had no duty to defend or indemnify JBY in connection with a suit brought against JBY by one of its customers.  After careful review,[1] we affirm.

## I.  BACKGROUND

JBY operates a ship-repair and marina facility.  According to Charles Fleck (who is now deceased), JBY contracted to repair his boat in November 2003, after the boat was damaged in a storm.  The boat sat idle for several years in JBY's custody, however, while Fleck disputed invoices for repairs and storage fees.

In March 2006, Fleck hired a marine surveyor to inspect the boat at JBY's facility.  The surveyor discovered the boat was partially flooded and sinking from the bow.  Based on the surveyor's observations, Fleck filed a state-court lawsuit alleging JBY was liable for the flooding and related damage, as well as for not returning the boat to Fleck.  Fleck did not initially serve JBY with a copy of the complaint he filed in March 2006.  Nevertheless, he was able to obtain physical custody of the boat following an ex-parte replevin hearing in January 2007.

---

[1] "We review the district court's determination and application of Florida law in a summary judgment ruling de novo." *Lime Tree Vill. Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir. 1993).

2

JBY was eventually served with the complaint in May 2008, shortly before Fleck amended it. Fleck's amended complaint asserted claims for breach of contract, conversion, gross negligence, and fraud. JBY moved to dismiss the suit on the basis that Fleck's claims were barred by Florida's economic-loss rule. The state court evidently agreed (in part), and it dismissed Fleck's gross-negligence claim with prejudice.[2]

Fleck then filed a second amended complaint, asserting claims for breach of contract, conversion, fraud, and fraud in the inducement. Following the second amendment, JBY for the first time (in March or April 2009) notified St. Paul of Fleck's claims. St. Paul had issued JBY multiple liability policies covering the years relevant to Fleck's suit.

After reviewing the second amended complaint, St. Paul denied coverage and refused to defend JBY. JBY and Fleck's estate[3] thus proceeded to trial (without St. Paul's participation), based on a third amended complaint, which contained substantially the same allegations against JBY.[4] St. Paul was not provided a copy of the third amended complaint.

---

[2] One of Fleck's fraud counts was also dismissed with leave to amend.

[3] Fleck was deceased by the time of the trial, so the claims were pursued by his estate.

[4] The third amended complaint added a claim for civil theft, which has no bearing on our analysis.

Following a February 2015 jury trial, the state court entered final judgment against JBY in the amount of $175,874.52. Fleck's estate then obtained two more judgments against JBY—one for attorney's fees of $170,350.50 and one for costs of $20,947.75. JBY forwarded the judgments to St. Paul, demanding indemnity and reimbursement for its defense costs. St. Paul once again denied the claim.

JBY then sued St. Paul for breach of contract in state court. The case was removed to federal court, and both parties moved for partial summary judgment on the issue of whether St. Paul owed JBY a duty to defend. The parties' arguments on the dispositive issue hinged on differing interpretations of Florida law as applied to the operative policy language.

The general policy provision[5] underlying JBY's claims[6] states:

> [St. Paul] will pay on behalf of [JBY] all sums which [JBY] shall become legally obligated to pay as damages because of . . . "Property Damage" to which this insurance applies. [St. Paul] will have the right and duty to defend [JBY] against any claim or "suit" seeking those damages. [St. Paul] will have no duty to defend [JBY] against any claim or "suit" seeking damages to which this insurance does not apply. [St. Paul] may, at their [sic] discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

---

[5] Each of the policies in force during the relevant time period contained a general liability provision with substantially the same language. To the extent the language varied slightly, the differences are not relevant to our analysis.

[6] JBY argued coverage under other policy provisions in the district court, but they have not asserted those provisions as a basis for liability on appeal.

The policies' definitions and exclusions clarify the types of suits or claims "to which [the] insurance applies." Most notably, coverage is limited to claims "caused by an 'occurrence.'"

The policies' definitions of "occurrence" changed slightly over the relevant period. From 2003 to 2005, "occurrence" was defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results in . . . 'property damage' neither expected nor intended from the standpoint of the insured." From 2005 to 2006, "occurrence" was defined simply as "an accident, including continuous or repeated expos[ure to] substantially the same general harmful conditions."

The crux of the issue determined by the district court was whether it was appropriate to consider—for purposes of determining the duty to defend—the claims and legal theories asserted in Fleck's second amended complaint, in addition to Fleck's factual allegations. JBY contended Fleck's claims and legal theories were irrelevant. According to JBY, coverage depended solely on the factual allegations in the second amended complaint. If those allegations could arguably support a claim that would be covered under the policy language, St. Paul owed a duty to defend. Thus, because Fleck's second amended complaint alleged facts that arguably could support a claim for accidental property damage, St. Paul was obligated to defend the suit.

5

St. Paul disagreed, arguing that Fleck's factual allegations had to be viewed in the context of the claims and legal theories actually pursued in the second amended complaint.  Because Fleck's second amended complaint alleged claims based on intentional conduct, the factual allegations could not fairly be construed as supporting a claim for damages caused by an "accident."  Thus, Fleck's claims were not based on an "occurrence" covered by the policies.

After ordering supplemental briefing and holding a hearing on the issue, the district court agreed with St. Paul.  It concluded Fleck's suit was not based on an "occurrence," because the second amended complaint "did not assert any cause of action through which [JBY] could potentially be found liable for acts that were not intentional."  Thus, the "second amended complaint did not 'fairly and potentially' bring Fleck's suit within the scope of coverage under the Policies."  The district court therefore granted St. Paul's motion and denied JBY's on the issue of the duty to defend.[7]

In addition, because it determined St. Paul owed no duty to defend JBY under the relevant policy provisions, the district court concluded St. Paul could not possibly owe a duty to indemnify JBY under those same provisions.  It therefore

---

[7] The district court further determined summary judgment was appropriate because Fleck's gross-negligence claim was dismissed by the state court with prejudice.  Thus, according to the district court, it would be impossible for Fleck to state a claim that would be covered under the policies.  JBY challenges this ruling on appeal, arguing it was inappropriate for the district court to consider facts beyond those alleged in the second amended complaint.  We need not reach this issue because we agree with the district court that the second amended complaint's allegations did not support a claim within the policies' scope of coverage.

granted St. Paul summary judgment on the issue of indemnity as well.  JBY timely appealed.

## II.  DISCUSSION

Because the substantive law of Florida controls this contractual dispute, "[o]ur objective is to determine the issues of state law as we believe the Florida Supreme Court would."  *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1231 (11th Cir. 2004).  In doing so, we are bound by decisions of the Florida Supreme Court.  We are also bound by decisions from Florida's intermediate appellate courts, barring persuasive evidence that the Florida Supreme Court would rule differently.  *See Bravo v. United States*, 577 F.3d 1324, 1325 (11th Cir. 2009).  Our own decisions interpreting Florida law are also binding, "absent a later decision by [a] state appellate court casting doubt on our interpretation of that law."  *EmbroidMe.com, Inc. v. Travelers Prop. Cas. Co.*, 845 F.3d 1099, 1105 (11th Cir. 2017).

The parties agree, as they must, that an insurer's duty to defend is broader than its duty to indemnify.  *See Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 443 (Fla. 2004).  Likewise, the parties concede the duty to defend "arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage."  *Id.* at 442–43.  The parties disagree, however, as to the meaning of the Florida Supreme Court's instruction that "[t]he duty to defend must be

7

determined from the allegations in the complaint." *Id.* at 443; *see also id.* ("The duty is determined solely by the allegations against the insured, not by the actual facts, nor the insured's version of the facts." (quoting *Irvine v. Prudential Prop. & Cas. Ins. Co.*, 630 So. 2d 579, 579–80 (Fla. 3d DCA 1993))).

As it did in the district court, JBY contends on appeal that the duty to defend depends solely on the *factual* allegations of the complaint, to the exclusion of any causes of action or legal theories that might also be alleged. We disagree.

Nothing in the Florida Supreme Court's statement that the duty to defend depends on a complaint's allegations indicates a desire to limit consideration to the complaint's *factual* allegations. Indeed, such a limitation would appear to be inconsistent with the Florida Supreme Court's own application of the relevant standard. *See Nat'l Union Fire Ins. Co. v. Lenox Liquors, Inc.*, 358 So. 2d 533, 536 (Fla. 1977) ("The original complaint filed by McClendon did not allege facts which would bring the cause within the coverage of the insurance policy since *the only cause of action alleged* was one for intentional acts by Rosen. Therefore, the insurer has no duty to defend." (emphasis added)); *see also Chicago Title Ins. Co. v. CV Reit, Inc.*, 588 So. 2d 1075, 1076 (Fla. 4th DCA 1991) ("[W]hether or not a duty to defend exists arises from the allegations of the complaint itself, not on some conclusions drawn by the insured based upon *a theory of liability* which has not been pled." (emphasis added)); *Baron Oil Co. v. Nationwide Mut. Fire Ins.*

8

*Co.*, 470 So. 2d 810, 813–14 (Fla. 1st DCA 1985) ("[W]here an amended complaint alleges facts that clearly bring the entire *cause of action* within a policy exclusion, and the amended complaint contains no additional *counts or causes of action* which show coverage, the allegations in the amended complaint control and the insurer's duty to defend comes to an end." (emphasis added)).

JBY's contention is also at odds with our previous interpretation of the standard.  In a long line of cases, we have stated that the duty to defend depends on "the facts *and legal theories* alleged in the pleadings and claims against the insured."  *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1323 (11th Cir. 2014) (emphasis added); *James River Ins. Co. v. Ground Down Engineering, Inc.*, 540 F.3d 1270, 1275 (11th Cir. 2008) (same); *Lawyers Title Ins. Corp. v. JDC (Am.) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995) (same).[8]  This interpretation of the standard, in addition to being repeatedly applied within our circuit, has been adopted by at least one Florida intermediate appellate court.  *See Mid-Continent Cas. Co. v. Royal Crane, LLC*, 169 So. 3d 174, 180–81 (Fla. 4th DCA 2015).

---

[8] JBY argues at length in its reply brief that we should ignore this line of precedent because it is based on a case that is factually distinguishable.  Ironically, JBY then accuses St. Paul (in the very next paragraph) of "artfully ignor[ing]" the Second Circuit's opinion in *Allianz Insurance Company v. Lerner*, 416 F.3d 109 (2d Cir. 2005), because St. Paul suggested the case was distinguishable.  JBY's reliance on *Allianz* is misplaced.  In addition to being non-binding on this Court, the Second Circuit's opinion in *Allianz* dealt with materially different policy language and was decided under New York law.  It therefore has little relevance to our application of Florida law to JBY's policies.

JBY nevertheless argues we should disregard this line of cases and instead take guidance from our opinion in *Lime Tree Village Community Club Association, Inc. v. State Farm General Insurance Co.*, 980 F.2d 1402 (11th Cir. 1993). In *Lime Tree*, the defendant insurer asked us to re-characterize claims that were, in fact, asserted in the complaints against its insured. *Id.* at 1404–05. Those claims included, among others, slander of title and restraint of trade. *Id.* The insurer argued such claims were "'merely' creative" ways of seeking relief for intentional discrimination, which was excluded from the policy. *Id.* at 1406. We declined the insurer's invitation to re-characterize the claims, explaining that under the facts alleged, the insured could be liable "for example, for unintended slander of title and unintended restraint of trade." *Id.* (footnote omitted). The duty to defend was thus triggered "regardless of the label [the insurer] would like to attach to *the cause of action*." *Id.* (emphasis added).

It was in that context we explained in *Lime Tree* that a "court cannot speculate as to the nature or merit of the claims"; rather, a court "may only look to the factual allegations of the underlying complaint." *Id.* In other words, a court is not free to look at whether the causes of action asserted in a complaint are actually meritless or are "'merely' creative" ways of recasting other claims. If the complaint's factual allegations could support liability under one of the legal theories alleged in the complaint, the duty is triggered. *Lime Tree* did not hold that

10

the legal theories alleged in a complaint are irrelevant to the analysis of whether a duty to defend exists.[9]

We therefore conclude the district court did not err by considering whether the complaint alleged both facts and legal theories under which JBY could be found liable.  Nor did the district court err by concluding the facts and legal theories alleged in the underlying complaint did not "fairly and potentially bring the suit within policy coverage."[10]  *See Jones*, 908 So. 2d at 442–43.

## III.  CONCLUSION

We affirm the district court's grant of summary judgment in favor of St. Paul and its denial of JBY's motion for partial summary judgment.

**AFFIRMED**.

---

[9] In any event, a subsequent case from an intermediate appellate court in Florida has stated the standard as allowing consideration of the legal theories alleged in a complaint.  *See Royal Crane*, 169 So. 3d at 180–81 ("The insurer's duty to defend arises solely from the facts and legal theories alleged in the pleadings and claims against the insured." (quotation omitted)).  Thus, even if we were to assume JBY's interpretation of the holding in *Lime Tree* were correct, we would not be bound by that holding.  *See EmbroidMe.com*, 845 F.3d at 1105.

[10] JBY argues for the first time in its reply brief that the district court erred by concluding liability for Fleck's breach-of-contract claim would necessarily be based on intentional conduct.  That argument has been waived.  *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court." (quotation and alteration omitted)).  Further, the policies exclude contractual liability from coverage.